C. G. CASTER COMPANY, Plaintiff-Appellant, *v.* ROBERT J. REGAN, Defendant-Appellee.

First District (4th Division) No. 63172

Opinion filed November 3, 1976.

John H. Conway, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago, for appellant.

P. Sveinbjorn Johnson, of Johnson & Martin, of Chicago, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the Circuit Court's denial of a motion for a temporary restraining order. The action was brought by a former employer, C. G. Caster Company, against its former employee, Robert J. Regan, to enforce a restrictive covenant prohibiting investigation and adjustment of casualty insurance claims for two years after leaving its employment, within a 38-mile radius of Caster Company's Chicago office.

The issues presented for review are whether the covenant not to compete is void because of plaintiff's failure to satisfy its obligations under the contract, and whether the covenant not to compete is unreasonable taking into consideration the time and territory limitations.

Charles Caster was president of C. G. Caster Company for 15½ years prior to the filing of this suit; since about March of 1960. The nature of its business is the investigation and adjustment of insurance claims for insurance companies, insurance agents and others. The scope of the operation covers an area within 75 miles of the Chicago Loop. From early 1972 thorugh 1975 the business received assignments from about 20 to 22 different companies, but during the latter part of 1974 the business slacked off to about 15 or 16 companies. Best's Directory indicates 133 insurance companies use independent adjusters in the Chicago area.

Mr. Regan was employed by C. G. Caster Company in February of 1972. The parties entered into an employment contract, extending for five years, hiring the defendant as general manager of the company for a salary of $20,000 per year plus 10% of the net profits for the preceding year multiplied by the years of service to a maximum of 50%, plus entertainment, travel and miscellaneous expenses. The employment contract also provided the defendant with the use of a car, hospitalization, disability and group life insurance and a paid vacation. The contract also provided:

"Regan further agrees that during the term of this agreement and

for a period of two years thereafter, he will not, directly or indirectly, solicit the business of any client or customer of the Company for any purpose whatsoever, either for his own benefit or for the benefit of any other person, firm or corporation."

The contract was terminable upon 30 days notice with certain stipulated payments if termination is by the company. By a companion agreement Regan was granted the option to purchase 49% of the capital stock of the company. By contract amendment Regan received 50% of the profits for the year 1973.

By amendment to the agreement it was provided, in pertinent part:

"Regan further covenants and agrees that he will not either directly or indirectly own, nor engage in the business of investigating or adjusting casualty, liability or physical damage claims or other claims for or on behalf of the insurance industry or their representatives; nor will he solicit clients of the company for any business purposes whatsoever without first obtaining written consent of the company.

"The parties hereto stipulate and agree that a reasonable limitation upon Regan for the operation of this covenant shall be for a period of two years from the termination of this agreement and shall cover an area limited by a 38 miles radius from the Company's offices at 222 West Adams Street, Chicago, Illinois."

Mr. Regan was in charge of all line functions, the assignment of work, hiring supervision, discharge of personnel and every duty that could be expected of a general manager. He was the primary operating officer. His termination on May 6, 1975, was due to Mr. Regan's violation of certain production procedures of the company. Fairly summarized, Caster Company charges Mr. Regan with failing to adequately supervise personnel.

Mr. Regan admitted after his employment with Caster Company was terminated he was restricted by a 38-mile radius of Chicago. He sent a letter to each of 10 to 12 clients of Caster Company subsequent to his termination. This letter was a conditional representation on his part that he could handle investigations and adjustments in certain areas outside the 38-mile limit, but could not handle investigations or claim adjusting within the 38-mile radius. He told one client, Old Republic Insurance Company, he would be willing to accept claims or undertakings within the 38-mile radius. In fact, he accepted an assignment from Old Republic in September of 1975, and thereafter he received about four or five assignments a month within the 38-mile radius.

Mr. Regan is the principal and incorporator of a corporation known as R. J. Regan & Associates, Inc. The purpose of this corporation is investigation and adjustment of insurance claims. This corporation came

into existence in the first part of 1975. The office of the corporation is 57 West Jefferson, Joliet, Illinois. Mr. Regan does his investigation and claim adjusting from that office. He said, "If any client hires me to do a job for them and it is within the 38 mile radius, I do it."

Mr. Regan had been in the investigation and adjustment of casualty insurance claims for 29 years. Before he met Mr. Caster, Mr. Regan was doing business with numerous insurance companies with whom Caster is now doing business.

The complaint for injunction alleged the defendant established a competing business using the knowledge obtained in the plaintiff's employ and the names and addresses of plaintiff's clients soliciting them and inducing numerous clients to cease doing business with the plaintiff, causing irreparable damage to the plaintiff's business.

After hearing evidence the court denied the motion of plaintiff for a temporary restraining order. This appeal is from that order.

We are now asked to determine on the basis of the evidence produced at the hearing on plaintiff's motion for a temporary injunction whether it is an abuse of discretion for the court below to deny the plaintiff's motion.

The defendant does not deny his conduct is in direct violation of the restrictive covenant agreed to by him. Rather, he contends the covenant is void because the plaintiff failed to comply with the terms of the employment contract; because the plaintiff had no cause for terminating defendant's employment; and because enforcement of the restrictive covenant would unreasonably restrict competition.

Mr. Regan maintains the motion for temporary injunction was properly denied since the plaintiff failed to comply with its obligations under the contract.

■■ In order for a preliminary injunction to issue, the movant must establish a likelihood of success on the merits. (*Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180.) However, a party is not required to make out a case which in all events will warrant relief at the final hearing. All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed and lead the court to believe he probably will be entitled to the relief prayed for if the proof should sustain his allegations.

As this court has previously stated, in *Grillo*:

"The purpose of an interlocutory, preliminary or temporary injunction is quite clear. Such a decree is granted before a trial on the merits of a case for the purpose of preventing a threatened wrong, or any further perpetration of injury, in order to preserve the status quo with the least injury to the parties concerned. [Citation.] It is not the purpose of such an injunction to determine

any controverted rights nor to decide the merits of a case. [Citation.]" *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1011.

Notwithstanding the fact the defendant here raises issues which may arguably void the restrictive covenant (*e. g.* lack of cause for termination of employment and failure of plaintiff to satisfy its financial obligations under the contract), the plaintiff has sufficiently raised a fair question as to the existence of its contractual rights, and has shown it will probably be entitled to the relief prayed for if proof should sustain its allegations.

■■ Mr. Regan further maintains the motion for temporary injunction was properly denied since its enforcement would result in unfair restraint of trade.

Unquestionably, postemployment restrictive covenants infringe upon the economic mobility of employees as well as their freedom to follow personal interests, and must be regarded at least to some extent as a restraint of trade. For these reasons such covenants are carefully scrutinized by the courts. It is equally clear, however, that restrictive covenants do serve a real and measurable social utility in that they protect the employer from an unwarranted loss of good will. Thus, in all instances where courts are faced with the decision of whether to enforce a particular postemployment restriction, they must balance its social utility against its adverse effect on both the covenantor and the public.

The argument that the effect of enforcing a restrictive covenant would be to eliminate competition was considered and rejected by the Illinois Supreme court in *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433, where the high court pointed out a covenant in which the limitation as to time and territory is not unreasonable, is not unlawful or improper restraint of trade or competiton. The court further found relief by injunction is customary and proper.

The time and territory limitation of the instant covenant not to compete is two years and a 38-mile radius.

When the agreement was signed the defendant, a man with over 25 years of experience in the field of claim adjusting in the Chicago area, was hardly unable to look out for his own interests. He was fully aware of what he was doing, and in accepting the benefits he also knew if his employment would be terminated he would no doubt have to refrain from practicing in the Chicago area for the two-year period. In the absence of reasons more compelling than those advanced in this case the defendant cannot avoid his own commitments. He has accepted the benefits of the contract and must the take the burdens as well.

We conclude the terms of the agreement in this case are not unreasonable and that the agreement is not contrary to public policy.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby reversed and the cause is remanded with directions to enter a temporary injunction pending disposition of the case on its merits.

Reversed and remanded with directions.

JOHNSON, P. J., and ADESKO, J., concur.