718 F.2d 219
 1 Indiv.Empl.Rts.Cas. 267
 C.R. Mohan RAO, M.D., S.C., Plaintiff-Appellant,
Counterdefendant-Cross- Appellee,
v.
M. Hari Kishan RAO, M.D., Defendant-Appellee,
Counterplaintiff-Cross-Appellant,
v.
C.R. Mohan RAO, M.D., Counterdefendant-Cross-Appellee.
 Nos. 82-1954, 82-1971.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 17, 1983.
Decided Sept. 23, 1983.
Rehearing and Rehearing En Banc Denied Oct. 21, 1983.
 
 William J. Harte, and Norman J. Lerum, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, Ill., for plaintiff-appellant, counterdefendant-cross-appellee.
 Ronald Butler, Chicago, Ill., for defendant-appellee, counterplaintiff-cross-appellant.
 Before PELL and ESCHBACH, Circuit Judges, and VAN PELT, Senior District Judge.*
 ESCHBACH, Circuit Judge.
 
 
 1
 The primary issue in this diversity case is whether, under Illinois law, an employer may dismiss an employee without good cause and in bad faith and then enforce a restrictive covenant severely limiting the scope of the employee's professional practice. The secondary issue is whether an employee, who asserts that he is owed money under an employment contract, may circumvent the contract's arbitration clause by framing his claim as one sounding in tort. We resolve each issue in the negative; the restrictive covenant is unenforceable and the employee must take his claim for money to arbitration. Because the district court reached the same conclusions, the judgment under review is affirmed.I. THE EMPLOYMENT RELATIONSHIP AND THE DISTRICT COURT PROCEEDINGS
 
 
 2
 C.R. Mohan Rao ("Mohan") is a thoracic and cardiovascular surgeon who has practiced in the Chicago area for twenty years. Mohan is the sole officer, director, and shareholder of C.R. Mohan Rao, M.D., S.C. ("Mohan Corporation"), a medical service corporation formed under the laws of Illinois, see Ill.Rev.Stat. ch. 32, Secs. 631-48. M. Hari Rao ("Hari"), also a thoracic and cardiovascular surgeon, came to Chicago and began working for Mohan Corporation in the spring of 1976.
 
 
 3
 After negotiations, Mohan Corporation and Hari entered into an employment agreement on December 20, 1977. This agreement, which related back to Hari's first day of employment, was for a term of two years and, absent a timely notice, was automatically renewed for two successive terms of one year each. The agreement specified Hari's compensation for the four years and provided that at the completion of four years of service, Hari was entitled to purchase fifty percent of Mohan Corporation's shares for one dollar. The agreement further provided that the employment relationship could be terminated by either party upon the giving of ninety-days notice and if Hari's employment was terminated "for any reason," Hari could "not practice medicine in any capacity at Holy Cross Hospital, Christ Hospital, and Palos Community Hospital" for two years. This restrictive covenant was to become void after Hari became a fifty-percent shareholder in Mohan Corporation.
 
 
 4
 Hari and Mohan appeared to work well together. Hari proved to be an able surgeon and Mohan assisted Hari in securing staff privileges at Holy Cross Hospital. Mohan introduced Hari to other physicians at the hospital and as these physicians gained confidence in Hari, the number of patients referred to Hari increased. Surgeons such as Hari and Mohan depend on referrals as the primary, if not exclusive, source of patients. As time passed Hari did more and more work at Holy Cross Hospital while Mohan performed most of his surgeries at other hospitals.
 
 
 5
 On December 21, 1979, Mohan sent Hari a letter noticing Mohan's intention to terminate Hari's current employment relationship with Mohan Corporation. Pursuant to the provisions of the employment agreement, this termination became effective in ninety days--ten days before Hari would have obtained a fifty-percent interest in Mohan Corporation for one dollar. Mohan's letter giving notice of termination also contained an invitation to negotiate a "new relationship" between the corporation and Hari.
 
 
 6
 A new employment agreement was not reached and Hari and Mohan went their separate ways. Hari continued to practice exclusively at Holy Cross Hospital and his income increased considerably as he worked for himself rather than Mohan Corporation. Meanwhile, Mohan continued his successful surgical practice and, because he had developed his practice elsewhere, rarely appeared at Holy Cross Hospital.
 
 
 7
 The paths of Mohan and Hari, however, reconverged in court. Mohan Corporation brought this action seeking specific enforcement of the employment agreement's restrictive covenant or, in the alternative, liquidated damages arising from Hari's continued practice at Holy Cross Hospital. Hari counterclaimed against Mohan Corporation for unpaid compensation owing to Hari under the employment agreement. Hari also made two claims against Mohan individually--one for tortiously inducing Mohan Corporation to breach its contractual duty to compensate Hari fully, and one for tortiously converting this unpaid compensation to Mohan's personal use.
 
 
 8
 Because the employment agreement contains a clause stating that any dispute between the parties shall be resolved by compulsory arbitration, the district court stayed proceedings on and compelled arbitration of Hari's contractual claim against Mohan Corporation. The arbitration clause, however, applies only to the contracting parties--Hari and Mohan Corporation. The district court therefore held for trial Hari's tort claims against Mohan individually and Mohan Corporation's claim seeking enforcement of the restrictive covenant.
 
 
 9
 The district judge, who sat as the trier-of-fact, made his factual findings from the bench immediately after the trial ended. Although Mohan Corporation and Hari assert that the district judge erred in matters of law, no relevant factual finding is challenged as clearly erroneous. The district judge's findings, therefore, will serve as the starting point for our legal analysis.
 
 
 10
 The district judge found that Hari performed professionally to everyone's satisfaction, proved to be a competent surgeon, did not damage Mohan Corporation's reputation, and was a good employee. Mohan, therefore, did not terminate Hari's employment because Hari's performance was inadequate; indeed in the letter of termination Mohan invited Hari to continue to work for Mohan Corporation. Mohan terminated Hari's employment because, according to the district judge, Mohan did not want Hari to exercise his contractual right to obtain a fifty-percent interest in the corporation. Mohan testified, in fact, that he never intended to permit Hari to acquire fifty percent of Mohan Corporation's shares. The district judge further found that Mohan used the restrictive covenant provision as a bargaining tool to induce Hari to renegotiate his employment agreement with Mohan Corporation. This bargaining tool was not an insignificant matter because if Hari is precluded from practicing at Holy Cross Hospital, Hari's practice will be severely limited and the opportunities that Hari gained from his association with Mohan will be lost.
 
 
 11
 The district judge further found that at the time the employment agreement was executed, no one contemplated that Mohan Corporation could enforce the restrictive covenant in the event that Hari was dismissed to prevent him from becoming a fifty-percent shareholder. The court found that:
 
 
 12
 I don't believe that any of them thought that this was the way it was going to work out. I don't think that there was a doctor who came in here who, if they had had this contract, would have thought they could take the position that Mohan Rao is taking now. You know I heard one of [Mohan Corporation's witnesses] say it would be malicious to take that position.
 
 
 13
 Finally, the district judge characterized as "bad faith" Mohan Corporation's attempt to enforce the restrictive covenant in this case.
 
 
 14
 As a matter of law, the district court interpreted the employment agreement as not permitting Mohan Corporation to invoke the restrictive covenant where Hari was dismissed so that he would not become a fifty percent shareholder in the corporation. Alternatively the court held that if the contract's terms did permit the invocation of the restrictive covenant in this case, the covenant would be unenforceable under Illinois law. Ruling on Hari's claim against Mohan for inducing Mohan Corporation to breach its contractual duties, the court held that Mohan Corporation is, in essence, Mohan; therefore Mohan could not tortiously induce himself to breach a contract. The district court also entered judgment in favor of Mohan on Hari's claim of conversion.
 
 II. THE RESTRICTIVE COVENANT
 
 15
 The employment agreement states that the restrictive covenant will become effective if Hari's employment is terminated "for any reason." We suppose that a bad reason is still a reason; therefore, by the explicit terms of the contract, Mohan Corporation is entitled to enforce the restrictive covenant even though Hari was not dismissed for a good cause. Because the district court did not so interpret the contract, the court must have discerned and relied on an implied contractual term--a promise of good faith.
 
 
 16
 Under Illinois law, "in every contract both parties promise to act in good faith." Osten v. Shah, 104 Ill.App.3d 784, 786, 60 Ill.Dec. 497, 499, 433 N.E.2d 294, 296 (1982); see Stevenson v. ITT Harper, Inc., 51 Ill.App.3d 568, 573, 9 Ill.Dec. 304, 310, 366 N.E.2d 561, 567 (1977). The concept of "good faith" has its most natural and common application to the situation where one party exercises discretionary authority in a manner that affects the rights and duties of the other party. "Good faith between contracting parties requires that a party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously." Foster Enterprises v. Germania Federal Savings and Loan Association, 97 Ill.App.3d 22, 30, 52 Ill.Dec. 303, 309, 421 N.E.2d 1375, 1381 (1981). The implied promise of good faith, therefore, modifies Mohan Corporation's discretionary right to dismiss Hari and then to invoke the restrictive covenant.
 
 
 17
 The expressed language of the restrictive covenant can be overlaid with the implied promise of good faith in two ways. We could state that the promise of good faith dealing is an independent term, which, when breached, relieves Hari from abiding by the restrictive covenant. See generally C.G. Caster Company v. Regan, 88 Ill.App.3d 280, 285, 43 Ill.Dec. 422, 426, 410 N.E.2d 422, 426 (1980). Alternatively we could state that the exercise of a good faith termination is a condition precedent to the operation of the restrictive covenant. We need not choose the better verbal formulation because whichever expression is selected, the result is the same: Mohan Corporation's failure to act in good faith in terminating Hari's employment precludes the application of the restrictive covenant.
 
 
 18
 We also agree with the district court's alternative holding that even if the employment agreement did call for Hari to cease practicing at Holy Cross Hospital, no Illinois court would enforce the restrictive covenant in this case. Whatever may be said for the freedom of contract in general, restrictive covenants impair the availability of services and interfere with competition; therefore such covenants "are carefully scrutinized by the courts." Boyar-Schultz Corp. v. Tomasek, 94 Ill.App.3d 320, 323, 49 Ill.Dec. 891, 893, 418 N.E.2d 911, 913 (1981); Image Supplies, Inc. v. Hilmert, 71 Ill.App.3d 710, 713, 28 Ill.Dec. 86, 88, 390 N.E.2d 68, 70 (1979); see generally 6A Corbin On Contracts Sec. 1394 (1962). We believe that this is a case where an Illinois court would find that the restrictive covenant, as construed by Mohan Corporation, is unreasonably oppressive and thus unenforceable.
 
 
 19
 The Illinois courts have articulated two tests for determining whether a restrictive covenant is enforceable. Some courts have stated that a restrictive covenant will be enforced only if "the restriction is reasonably necessary for the protection of a legitimate business interest." Image Supplies, Inc. v. Hilmert, 71 Ill.App.3d 710, 713, 28 Ill.Dec. 86, 88, 390 N.E.2d 68, 70 (1979); accord U-Haul Company of Central Illinois v. Hindahl, 90 Ill.App.3d 572, 577, 45 Ill.Dec. 854, 859, 413 N.E.2d 187, 192 (1980). Other courts have declared that the test "is whether the covenant, under the circumstances of the particular case, is reasonably necessary for the protection of the employer's business against competition by methods commonly regarded as improper or unfair." Booth v. Greber, 48 Ill.App.3d 213, 218, 6 Ill.Dec. 477, 480, 363 N.E.2d 6, 9 (1977); accord Morrison Metalweld Process Corp. v. Valent, 97 Ill.App.3d 373, 376, 52 Ill.Dec. 825, 827, 422 N.E.2d 1034, 1036 (1981). We can discern little, if any, difference between the two tests; for the sake of completeness, however, we will combine the tests to state that the inquiry in this case is whether the restrictive covenant, as construed by Mohan Corporation, is reasonably necessary to protect a legitimate business interest or to prevent improper and unfair competition.
 
 
 20
 Mohan Corporation, in its attempt to justify the restrictive covenant, refers to the skills that Hari acquired while working for the corporation. It is clear under Illinois law, however, that a dismissed employee is free to "take with him general skills and knowledge acquired during his employment." MBL (USA) Corp. v. Diekman, 112 Ill.App.3d 229, 236, 67 Ill.Dec. 938, 945, 445 N.E.2d 418, 424 (1983) (quoting Packard Instrument Co. v. Reich, 89 Ill.App.3d 908, 917, 45 Ill.Dec. 266, 412 N.E.2d 617 (1980)). The time, expense, and effort spent in developing Hari's skills, therefore, do not justify the imposition of a restrictive covenant. See generally Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 652 (1960).
 
 
 21
 Mohan Corporation's more forceful position is that the restrictive covenant was needed in the employment agreement to protect the corporation's good will--i.e., to ensure that referrals from Holy Cross Hospital's physicians went to Mohan Corporation and not to Hari. We do not dispute the proposition that a surgeon's referral base is a legitimate business interest, see generally Packaging House, Inc. v. Hoffman, 114 Ill.App.3d 284, 286, 70 Ill.Dec. 69, 71, 448 N.E.2d 947, 949 (1983); American Hardware Mutual Insurance Company v. Moran, 705 F.2d 219, 221 (7th Cir.1983); however we cannot agree that the restrictive covenant, as interpreted by Mohan Corporation, was reasonably necessary to protect this interest or to protect against unfair competition.
 
 
 22
 To state the obvious, an employer bargains for a restrictive covenant out of a concern that an employee will in the future compete with the employer and capture the employer's traditional business. See Gorman Publishing Co. v. Stillman, 516 F.Supp. 98, 103 (N.D.Ill.1980) (Illinois law). Such competition is not present, of course, as long as the employee continues to work for the employer. In general, therefore, the best way for an employer to protect its good will is to continue to retain the services of the employee. This is not always possible because employees often leave their jobs; therefore a restrictive covenant that becomes effective when an employee quits his job may be enforceable as reasonably necessary to protect the employer's good will.
 
 
 23
 The necessity for a restrictive covenant when the employer, not the employee, terminates the working relationship is far less clear and, in our view, nonexistent in this case. If Mohan Corporation wanted to protect against competition from Hari, then Hari's employment should not have been terminated. To be sure, there are cases where an employer dismisses an employee but the employee's inadequate performance, in fact, impelled the dismissal. In such a case a restrictive covenant may be as reasonably necessary as in the case where the employee voluntarily leaves his job. However, that is not this case; Hari was not dismissed for inadequate performance or inappropriate conduct, but rather to prevent the exercise of Hari's contractual right to obtain fifty percent of Mohan Corporation. In short, a restrictive covenant that can become effective when an employee is terminated without good cause is not reasonably necessary to protect an employer's good will.[1] Because good will can be protected by not dismissing a good employee, the imposition of a restrictive covenant following such a dismissal serves only the purpose of preventing competition--an insufficient justification for enforceability. See Booth v. Greber, 48 Ill.App.3d 213, 218, 363 N.E.2d 6, 10, 6 Ill.Dec. 477, 482 (1977).
 
 
 24
 We reach our conclusion without any direct precedent from the Illinois courts. Nonetheless, the cases of other jurisdictions support our view that a restrictive covenant is unenforceable when an employee is terminated in bad faith and without good cause. See, e.g., Johanson v. Liberty Mutual Insurance Co., 232 N.Y.S.2d 856, 859 (N.Y.Sup.Ct.1962); Ritz v. Music, Inc., 189 Pa.Super. 106, 150 A.2d 160, 162 (1959); Security Services, Inc. v. Priest, 507 S.W.2d 592, 595 (Tex.Civ.App.1974); see generally 14 Williston On Contracts Sec. 1643 (3d ed. 1972) (when an employer causes termination of the employment, most courts refuse to enforce a restrictive covenant).
 
 
 25
 None of the cases cited by Mohan Corporation indicates that the Illinois courts would take a contrary position. The two "at-will-employment" cases that Mohan Corporation cites, Sargent v. Illinois Institute of Technology, 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1979); Criscione v. Sears, Roebuck & Co., 66 Ill.App.3d 664, 23 Ill.Dec. 455, 384 N.E.2d 91 (1978), were actions brought by dismissed employees and are inapposite to the situation of an employer attempting to enforce a restrictive covenant. Cockerill v. Wilson, 51 Ill.2d 179, 281 N.E.2d 648 (1972), also cited by Mohan Corporation, is a case where the employer dismissed an employee and still enforced a restrictive covenant. Although the court's opinion does not state the reason for the dismissal, it is clear that, unlike the instant case, the employee was not dismissed to prevent the exercise of a lucrative contract right. The other three cited cases involve dismissals for cause, see Booth v. Greber, 48 Ill.App.3d 213, 216, 6 Ill.Dec. 477, 479, 363 N.E.2d 6, 8 (1977); C.G. Caster Co. v. Regan, 43 Ill.App.3d 663, 665, 2 Ill.Dec. 185, 187, 357 N.E.2d 162, 164 (1976), or termination of the employment relationship by mutual agreement, see Wessel Company v. Busa, 28 Ill.App.3d 686, 689, 329 N.E.2d 414 (1975). Indeed, in C.G. Caster Co. v. Regan, the court indicated that the "lack of cause for termination" could render "void the restrictive covenant." 43 Ill.App. at 667, 2 Ill.Dec. at 188, 357 N.E.2d at 165.
 
 III. HARI'S TORT CLAIMS
 
 26
 Hari does not contest the district court's decision compelling arbitration of Hari's claim against Mohan Corporation for breach of contract (i.e., unpaid compensation). Yet Hari continues to assert that he is entitled to collect damages against Mohan individually for tortiously inducing the corporation's breach and for personally converting the funds owing to Hari. We disagree with Hari's assertion and therefore affirm the judgment of the district court.
 
 
 27
 First, it is clear that a party to a contract cannot be held liable for tortiously inducing himself to breach the contract. See Worrick v. Flora, 133 Ill.App.2d 755, 759, 272 N.E.2d 708, 711 (1971); see generally 3 J. Dooley, Modern Tort Law 218 (1977). Only a third party separate from the contracting parties can be liable for such a tort. See B.R. Paulsen & Co. v. Lee, 95 Ill.App.2d 146, 152, 237 N.E.2d 793, 796 (1968); see also Olson v. Scholes, 17 Wash.App. 383, 563 P.2d 1275, 1280 (1977). Mohan Corporation acts only through Mohan; the corporation could not form or breach contracts without Mohan's involvement and, in a very real sense, Mohan is a party to the employment agreement in this case. See West v. Troelstrup, 367 So.2d 253, 255 (Fla.App.1979). Because Mohan is Mohan Corporation's sole shareholder, officer, and director, therefore, we are convinced that Mohan would be considered by an Illinois court not to be a separate entity capable of inducing Mohan Corporation to breach its contracts.
 
 
 28
 Second, even if Mohan could tortiously induce the corporation to breach its contracts, one element of that tort, of course, is a breach. Whether Mohan Corporation has breached the employment agreement, however, is an issue exclusively for arbitration. An essential element of the tort, therefore, could not be established in this action and judgment was properly entered in favor of Mohan. Similarly, Hari's tort claim of conversion is predicated on the existence of Hari's entitlement to further compensation from Mohan Corporation. See Kunde v. Biddle, 41 Ill.App.3d 223, 225, 353 N.E.2d 410, 412 (1976). Whether Hari is so entitled is the proper subject of arbitration and thus Hari could not have prevailed on this tort claim below.
 
 IV.
 
 29
 For the reasons given in this opinion, the district court's judgment is affirmed in all respects. The parties shall bear their own costs on appeal.
 
 
 
 *
 The Honorable Robert Van Pelt, Senior District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 In fact, as noted previously, one physician characterized Mohan's actions as very unusual and malicious