Erwin P. GOMEZ, M.D.,
Defendant-Appellant,

v.

CHUA MEDICAL CORPORATION,
Plaintiff-Appellee.

No. 3–1285 A 370.

Court of Appeals of Indiana,
Third District.

July 14, 1987.

Rehearing Denied Oct. 15, 1987.

---

Dawn E. Wellman, Cohen & Thiros, Merrillville, for defendant-appellant.

Fred M. Cuppy, George W. Carberry, Kathryn D. Schmidt, Thomas, Burke, Dyerly & Cuppy, Merrillville, for plaintiff-appellee.

GARRARD, Presiding Judge.

The trial court awarded Chua Medical Corporation summary judgment on its claim that Dr. Gomez had violated a covenant against competition. On appeal Dr. Gomez' principal contention is that the covenant should not be enforced on summary judgment because of the nature of his termination by the medical corporation. In addition he challenges the validity of a restricted zone with a 30 mile radius and the provision for liquidated damages contained in the agreement.

The record discloses that the medical corporation had been in operation in Merrillville, Indiana since June 1976. On December 31, 1979 it employed Dr. Gomez to specialize in cardiovascular and thoracic surgery. The agreement was for a one year term, automatically renewable for a second year, and contained a covenant against competition in Lake and Porter Counties for three years.

In 1982 the parties amended Dr. Gomez' employment agreement. Salary was increased and reference to a specific term of employment was deleted. The parties agree that Dr. Gomez became an employee-at-will under the new agreement. The non-competition agreement was amended to provide the following:

"Upon termination of this agreement for any reason whatsoever, Erwin P. Gomez, M.D. or his corporation, agrees he will not compete, directly or indirectly, with the Cardiovascular Surgery Associates and/or Felipe S. Chua, M.D., as an officer, director, partner, employee or individually, in the practice of thoracic and cardiovascular surgery for a period of two (2) years from the date of termination of this agreement, within a thirty (30) mile radius of 7895 Broadway, Merrillville, Indiana 46410. It is conclusively agreed by the parties hereto that the above-described competitive restrictions of geographic location, occupational scope and time are reasonable, in that the majority of the patients of Dr. Felipe S. Chua and his corporation are within such area, and that since no adequate remedy exists at law to enforce this pro-

vision, injunctive relief may be sought to enforce the terms of this paragraph. The undersigned parties furthermore agree that Dr. Erwin P. Gomez may practice within the restricted area following termination of this agreement, in violation of the foregoing paragraph upon Dr. Erwin P. Gomez's payment to the Chua Medical Corporation of the lump sum of Fifty Thousand Dollars ($50,000.00). Such lump sum is regarded by the parties hereto in good faith as liquidated damages, and the sum may be paid by Dr. Erwin P. Gomez in lieu of the Chua Medical Corporation's right to injunctive relief, as liquidated damages in full."

On September 1, 1983 Dr. Gomez was notified that his employment was being terminated and he, in fact, left practice with the corporation in December of that year.

In January 1984 Dr. Gomez set up practice in cardiovascular and thoracic surgery in Merrillville, Indiana and the medical corporation brought this action seeking an injunction or, in the alternative, liquidated damages as provided by the agreement.

In *Raymundo v. Hammond Clinic Assoc.* (1983), Ind., 449 N.E.2d 276 our Supreme Court found enforceable a restrictive covenant given by a physician to the clinic which had employed him. The covenant prohibited competition for two years within a twenty-five mile radius of the City of Hammond.[1] The covenant contained a liquidated damages provision that called for payment of $25,000 if a breach occurred during the first year after termination and $15,000 if it occurred during the second year. *See also Harris v. Primus* (1983), Ind. App., 450 N.E.2d 80 and *Ross Clinic v. Tabion* (1981), Ind.App., 419 N.E.2d 219, which concern covenants against competition applied in the medical care field.

The principal issue raised in the present appeal is that *Raymundo* and the other Indiana decisions involve situations where the covenantor-employee voluntarily withdrew from the employment. Dr. Gomez urges the rule of enforceability should be different where the employee is terminated without cause.

In order to focus upon this question, we first consider the other arguments he presents on appeal.

■ We conclude that the area of restriction is not unreasonable. A thirty mile radius around the medical corporation's office would necessarily be very close to equivalent to the limitation of the city limits of Hammond plus twenty-five miles found reasonable in *Raymundo*. Affidavits supplying the names and addresses of some 1175 patients disclose a substantial patient base within the proscribed area. The area appears reasonable to protect the interests of the corporation.

■ Secondly, we disagree with the contention that the liquidated damages provision should have been held unenforceable as merely imposing a penalty.

Citing *Beiser v. Kerr* (1939), 107 Ind. App. 1, 20 N.E.2d 666, the Supreme Court in *Raymundo* affirmed that cases such as these are especially adapted to adopting provisions for liquidated damages. It stated that the validity of such provisions will be upheld unless the amount agreed upon is grossly disproportionate to the loss which may result from the breach or is unconscionably in excess of the loss which the agreement seeks to avert. 449 N.E.2d at 283, 284.

The evidence in the present case disclosed that Dr. Gomez produced more than $720,000 in surgical fees during his four years' employment with the corporation.[2] His competition commenced virtually as soon as he left Chua. We cannot say the liquidated damages figure was unreasonable pursuant to *Raymundo*. The provision was valid.

1. Except for the cities of Calumet City and Lansing, land lying in Illinois was excluded.

2. The parties' experience before entering the second agreement bears directly on the reasonableness of the damages provision. While the earnings experience after the covenant is certainly not controlling, it is circumstantial evidence from which reasonableness may also be inferred.

Thus, we turn to the principal contention on appeal. Dr. Gomez acknowledges that contracts for employment-at-will are valid in Indiana, and that persons so employed may be terminated at the choice of their employers. *See, e.g., Campbell v. Eli Lilly Co.* (1980), Ind.App., 413 N.E.2d 1054; *Martin v. Platt* (1979), 179 Ind.App. 688, 386 N.E.2d 1026. He also acknowledges that he was so employed and that the corporation was entitled to terminate him. He asserts, however, that the fact he was terminated without cause creates such an issue concerning the reasonableness of the covenant that summary judgment should have been precluded or granted in his favor.[3]

Despite our public policy opposing contracts in restraint of trade, reasonable covenants against competition given by employees or sellers of a business are enforceable. The covenant, however, must be reasonable in its time and space limitations, and the types of conduct or activity regulated. It must also be responsive to a legitimate interest of the covenantee which might be protected. These determinations of reasonableness are interrelated and are to be resolved by the court as a question of law. *Raymundo*, 449 N.E.2d at 280; *Frederick v. Professional Bldg. Main. Indus., Inc.* (1976), 168 Ind.App. 647, 648, 344 N.E.2d 299, 301.

Dr. Gomez argues that the reasonableness of the restrictive covenant is dependent upon the nature of his termination. He urges that for the corporation to have terminated him for other than good cause renders the covenant unreasonable and, therefore, unenforceable.

Admittedly, no prior Indiana cases have expressly considered what effect the form of termination has upon the reasonableness of the covenant.[4]

There appear to be four basic alternatives: (1) the employee voluntarily leaves the employment; (2) the employee is discharged for good cause; (3) the employee is discharged in bad faith; and (4) the employee is terminated, but neither good cause nor bad faith appear to exist. (This would also cover the expiration of a contracted term of employment.)

Most of the decided cases involve the situation, as in *Raymundo*, where the employee voluntarily leaves the employment. Clearly, the covenants are enforceable in such circumstances.[5]

Dr. Gomez concedes and the opinions appear to acknowledge that this would also be the case where the employee is discharged "for cause," although dispute might exist concerning what conduct amounted to "cause." *See, e.g., Rao v. Rao* (7th Cir.1983), 718 F.2d 219, 224. Under such a situation the employee's conduct may compel dismissal and the employer's legitimate interest in protecting its "good will" continues to make enforcement reasonable.

Where the employee is discharged in "bad faith" it appears the covenant will not be enforced, but this generally occurs through the operation of equity.

Since a suit to enforce a restrictive covenant by injunction is likened to specific performance, equitable defenses such as "clean hands" and the requirement that one who seeks equity must do equity apply. They will bar enforcement of the covenant where bad faith is shown.[6] *Security Ser-*

---

**3.** In the trial court each side filed an affidavit asserting that party's bare conclusion that there was or was not good cause for the termination. Neither affidavit was entitled to consideration on this point. Indiana Rules of Procedure, Trial Rule 56; *Podgorny v. Great Central Ins. Co.* (1974), 160 Ind.App. 244, 311 N.E.2d 640. Thus, as presented to the court, neither good faith in the sense of just cause nor bad faith was established as an issue.

**4.** A covenant was recently enforced in *Field v. Alexander & Alexander of Ind., Inc.* (1987), Ind.

App., 503 N.E.2d 627, where the employee was discharged.

**5.** The balance of our examination assumes that the covenant would be otherwise reasonable as to time, space and activity.

**6.** *Martin v. Murphy* (1891), 129 Ind. 464, 28 N.E. 1118, and *Duckwall v. Rees* (1949), 119 Ind.App. 474, 86 N.E.2d 460 held a provision for liquidated damages provided an adequate remedy at law so as to defeat a suit in equity for specific performance. We nevertheless have no hesi-

*vices, Inc. v. Priest* (Tex.Civ.App.1974), 507 S.W.2d 592; *Dutch Maid Bakeries, Inc. v. Schleicher* (1942), 58 Wyo. 374, 131 P.2d 630.

However, in *Rao, supra,* the Seventh Circuit did not expressly rely on the maxims of equity to deny enforcement of a restrictive covenant where a physician was terminated by his medical corporation employer to prevent him from qualifying to exercise a contractual right to obtain fifty percent ownership of the medical corporation.

Illinois law implies a covenant to act in good faith into every contract, and the court said this required a party vested with contractual discretion (to terminate employment) to exercise that discretion reasonably and not arbitrarily. The court also said that when an employer terminated an employee without good cause it did not appear that a restrictive covenant would be reasonably necessary to protect the employer's interests. (The employer could protect his good will by simply not dismissing a good employee. 718 F.2d 224.)

Admittedly, in the case before us there is no allegation or showing that Chua was engaging in bad faith in terminating Dr. Gomez when it did. Thus, the question becomes reduced to whether we should deny enforceability *unless* the employer can establish a *valid* reason for discharge.[7]

█ For several reasons we believe the answer is "no." We should not deny enforceability of an otherwise reasonable covenant upon the basis that the termination of an at-will employee is essentially arbitrary and that no reasonable basis for enforcement exists unless the employer can demonstrate "good cause."

█ First of all, we think the language of *Rao* should not be applied to situations where there is no evidence of bad faith. To apply the dictum concerning the employer's protectible interest to the fact-sensitive reason for his actual discharge would not be helpful since in the long run it would necessarily result in scrutiny of all reasons for discharge and perhaps other factual analyses as to whether enforcement would "really" protect good will. It is a sufficient answer to that question that the employer have established his good will interest and that it has become protectible because the covenantor has been or wishes to become either an employee or a seller of the business.

Secondly, we need not ignore the facts that requirements of discharge for cause foster disputes, grievances and lawsuits over whether proper cause exists. On the other hand, the so-called personality clash or subtle differences in the value systems of the principals may prevent formation of a truly good business relationship, even though no objective "cause" for termination can be pointed out. The concept of employment at will accommodates these variances and variations, and we see no reason why it should automatically preclude protection by restrictive covenant.

Finally, we respect and believe in individual freedom to contract. That freedom, if it is to be real, must necessarily include the freedom to enter into enforceable contracts that are unwise or even foolish. As the court pointed out in *Raymundo,* in this state there is strong public interest in the freedom of individuals to contract. If an individual agrees to be bound by a covenant against competition under circumstances where he is terminated at will, we see no compelling reason to deny enforcement of his promise.

If the termination is made in bad faith, equity may be called upon to deny enforcement, but neither equity nor the law will deny enforcement upon the basis that the employer must establish that a discharge was made in good faith, or for good cause.

*See State ex rel. Bradshaw v. Probate Ct.* (1947), 225 Ind. 268, 73 N.E.2d 769.

tation in concluding that equitable defenses may be asserted in defense of an action to enforce a covenant against competition, whether the basis therefor arises from the basically equitable nature of the proceeding, or from the reformed procedure combining law and equity.

7. We have purposely avoided delving into definitions of "good cause" or "just cause" for purposes of this opinion.

Dr. Gomez voluntarily agreed to the covenant before us. Nothing indicates he was misled concerning its meaning. It was reasonable as to time and space limitations and activity regulated.[8]

It follows that the summary judgment was properly granted.

Affirmed.

STATON, J., concurs.

SULLIVAN, J., concurs and files separate opinion in which GARRARD, P.J., concurs.

SULLIVAN, Judge, with whom GARRARD, Presiding Judge, joins, concurring.

As I interpret the argument of Dr. Gomez, it is that a termination without good cause renders an otherwise enforceable non-competition clause unenforceable. Gomez does not argue that employees-at-will should never be subject to non-competition clauses; nor does he argue that such provisions are, as a matter of public policy, unenforceable against practicing members of the medical profession.

The indispensable foundation for an enforceable non-competition covenant against an employee is that the employer has a legitimate and protectable good-will property interest. *See Field v. Alexander & Alexander of Indiana, Inc.* (1987) 2d Dist. Ind.App., 503 N.E.2d 627. It also stands to reason that unless such protectable property interest is more important than the public access to medical treatment, the non-competition provision should be carefully scrutinized.

The provision in question seems to focus upon the prospective loss of patients from Dr. Chua's practice if Dr. Gomez were permitted to engage in his medical specialty within the proscribed thirty-mile radius for the period of two years. Although I might find it more palatable to enforce a clause which would prohibit Dr. Gomez from soliciting and treating former or existing patients of Dr. Chua during the period, I am unable to discern that Dr. Chua has any

vested property right in his patients and their medical problems; nor am I able to discern how such property interest, if any, is validly protected by prohibiting Dr. Gomez from seeing *any* patients. The blanket prohibition can be validated only if we accept the proposition that Dr. Chua is entitled to a virtual monopoly with respect to his specialty.

New competitive economic forces are emerging not only in the health care industry but in other occupations and callings which have been traditionally thought of as professions. These new forces are a reality but their very existence seems to be transforming the professions into true commercial industries. The transformation, in my view, should be discouraged, if not condemned and prohibited.

Our public policy recognizes that teachers, firefighters, police, and other public employees may not, by labor strikes, deny necessary services to the community. The rationale underlying this prohibition is, at least in part, that even though strikes are "a matter of choice of political philosophies, [they] cannot and must not be permitted if the orderly function of our society is to be preserved." *Anderson Federation of Teachers v. School City of Anderson* (1969) 252 Ind. 558, 563, 251 N.E.2d 15, 18, quoting from *United States v. United Mine Workers* (1947) 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. Although the doctors in this case are not public employees, the same essentiality of services is involved. For this reason I would place private non-competition clauses, at least with respect to the medical and legal professions, in the same forbidden category.

However, in *Raymundo v. Hammond Clinic Association* (1983) Ind., 449 N.E.2d 276, 279, our Supreme Court held:

"With respect to Dr. Raymundo's claim that the covenant is inimical to the public interest and unenforceable as a matter of public policy, he has not supported his claim with cogent argument or authority

---

**8.** No issues were presented concerning the reasonableness of the time limitation or the

breadth of the activity regulated.

as to why physician's agreement not to compete should be treated differently, as a matter of public policy, than that of other business or professional people. His comments that it is in the public interest for physicians, as a group, to determine their code of conduct and ethical standards, that enforcement of such covenants may inflict a hardship upon the covenantor and that the public may thereby be denied medical services are unpersuasive in the light of the public interest in the freedom of individuals to contract."

I am therefore compelled to concur in the affirmance of the summary judgment which enforces the non-competition clause. Were it not for *Raymundo*, and if Dr. Gomez had advanced the public policy argument, I would have taken a different course.

To be sure, persons are entitled to freely bargain the terms and conditions of employment. Absent some overriding policy consideration, those terms and conditions must be honored by the parties and enforced by the courts. However, I am of the view that a contract provision which serves to severely restrict or deny medical facilities or treatment to members of the public is contrary to public policy and should not be enforced.

The medical profession itself condemns non-competition clauses such as here involved. The Opinions of the Council on Ethical and Judicial Affairs of the American Medical Association (1986) § 9.02 provides:

"AGREEMENTS RESTRICTING THE PRACTICE OF MEDICINE. The counsel on Ethical and Judicial Affairs discourages any agreement between physicians which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon termination of employment or a partnership or a corporate agreement. Such restrictive agreements are not in the public interest."

I would consider it extremely unlikely that a similar non-competition clause would be approved and enforced were it involved in the termination of a legal partnership, association or corporation. The Indiana Rules of Professional Conduct, Rule 5.6 and the Comment thereto provide:

"RULE 5.6 RESTRICTIONS ON RIGHT TO PRACTICE

A lawyer shall not participate in offering or making:

(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or

(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

COMMENT

An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer. Paragraph (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.

Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client."

I cannot imagine that our Supreme Court would voice public acceptance, endorsement, and enforcement of an agreement which would subject the parties to disciplinary sanctions imposed by that very court. By the same token it seems somewhat surprising that our courts have approved an equally unethical act on the part of doctors.

It ill behooves the judicial process to condone and enforce provisons which are not only contrary to public policy but which violently contravene the clear-cut ethical mandates of the medical profession itself. For these reasons it is not inappropriate, I think, to hope for our Supreme Court to conduct a reexamination of its earlier-stated view that the freedom of contract must

remain inviolate even if the public policy is disserved.

GARRARD, P.J., concurs.