STATON, Judge.
 

 Thomas Blackburn (“Blackburn”) and Raymond Green (“Green”) appeal the trial court’s order granting partial summary judgment in favor of Charles Sweeney, Jr. (“Sweeney”) and Daniel Pfeifer (“Pfeifer”). Blackburn and Green raise three issues for our review, but we find the following (restated) issue to be dispositive: whether the parties’ agreement violates Indiana Professional Conduct Rule 5.6.
 

 We reverse and remand.
 

 In 1988, attorneys Sweeney, Pfeifer and Blackburn formed a law partnership in South Bend, Indiana. At about the same time they hired Green as an associate, the partners decided to extend their personal injury practices to Ft. Wayne and Lafayette. Eventually, Green became a partner in both the Ft. Wayne and Lafayette partnerships but not in the South Bend partnership.
 

 • There existed three different partnership agreements, one for each of the three different areas of operation — Ft. Wayne, Lafayette and South Bend. All three partnership agreements contained a covenant against competition and a provision, designated as ■ § 10.6, that' any attorney who withdrew or who was expelled could not take with him any personal injury file.
 

 All three offices relied almost exclusively on personal injury eases; in particular, cases obtained from the firm’s extensive television and yellow page advertisements. Blackburn and Green operated the Ft. Wayne and Lafayette offices, and Sweeney and Pfeifer operated the South Bend office. When a dispute arose in 1992 concerning partnership funds, Sweeney and Pfeifer brought an action in Allen Superior Court against Blackburn and Green seeking injunctive relief, dissolution of the partnership, and an accounting.
 

 In a preliminary order, the Allen Superior Court ordered that the partnership be dissolved and that the attorneys collect client fees and expenses in a separate account, and provide a monthly accounting to each of the other attorneys. The court further held that § 10.6 of the partnership agreements violated Prof.Cond.R. 5.6 and was void. Approximately one month later, the parties entered an Agreement to Withdraw from Partnership (“Agreement”), the terms of which are now being challenged by Blackburn and Green. When the Agreement was entered, the parties stipulated to the dismissal with prejudice of the litigation that was still pending in Allen Superior Court.
 

 The Agreement provided in relevant part that:
 

 7. Sweeney and Pfeifer shall not directly or indirectly, within the areas described
 
 *1338
 
 on Exhibit “A”
 
 [1]
 
 attached hereto, do any advertising, including but not limited to, television, radio, newspapers, billboards, direct mail or yellow pages. In consideration of the agreement contained in paragraph 2 herein, Blackburn and Green shall not directly or indirectly, within the areas described on Exhibit “B”
 
 [2]
 
 attached hereto, do any advertising, including but not limited to, television, radio, newspapers, billboards, direct mail or yellow pages.
 

 8. Sweeney and Pfeifer for their agreement not to advertise as set forth in paragraph 7 above will each be entitled to receive 25% of the net annual profits of the Fort Wayne and Lafayette offices through the remainder of 1992 as well as for an additional period of five (5) calendar years. The final payment shall be made on or before the closing of books on December 31, 1997. Sweeney and Pfeifer shall each receive on December 31, 1997, an amount equal to 25% of the then existing amounts transferred into the advance account from the professional account. Sweeney and Pfeifer shall have the right to receive monthly and annual income statements through December 31, 1997. Sweeney and Pfeifer shall have the right to an accounting of eases settled and monies disbursed during the period of January through April, 1998. The following information shall be provided, upon request:
 

 Client Name, Insurer, Dates of Offer, Dates of Acceptance, Amount of Settlement, Dates of Disbursement'
 

 sjs s}: sj: ij:
 

 19. Except for a violation of paragraph 7 above any dispute arising from this agreement shall be resolved with the use of an arbitrator.... The parties to this agreement agree that a violation of paragraph 7 above would create immediate and irreparable harm with no adequate remedy at law. Accordingly, all parties shall retain the right to seek a Temporary Restraining Order and Permanent Injunction with damages and attorney fees for a violation of paragraph 7. The prevailing party to any action under this paragraph shall be entitled to payment of attorney fees and litigation expenses incurred.
 

 Record, pp. 493-95.
 

 Soon after the Agreement was entered, Blackburn and Green learned that Sweeney and Pfeifer were airing television advertisements in the Ft. Wayne area in contravention of the terms of the Agreement. Blackburn and Green then sent to Sweeney and Pfeifer a formal letter rescinding the Agreement and instituted this action for a declaratory judgment that the Agreement was void and unenforceable. Partial summary judgment was entered in favor of Sweeney and Pfeifer, and this appeal ensued.
 

 Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings.
 
 Stephenson v. Ledbetter
 
 (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).
 

 
 *1339
 
 When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party.
 
 Collins v. Covenant Mut. Ins. Co.
 
 (1992), Ind.App., 604 N.E.2d 1190, 1194. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).
 

 Blackburn and Green argue the Agreement is unenforceable because it violates Prof.Cond.R. 5.6, which provides as follows:
 

 A lawyer shall not participate in offering or making:
 

 (a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
 

 (b) an agreement in which a restriction on the lawyer’s right to practice is part of the settlement of a controversy between private parties.
 

 Today we address the following issue of first impression: whether an agreement not to advertise in a certain geographic area is an agreement that restricts the right to practice law as contemplated by Prof.Cond.R. 5.6. We conclude that it is.
 

 Although no court has discussed agreements between attorneys not to advertise, prohibitions against soliciting customers have been viewed as an impermissible restraint of trade in other contexts.
 
 See e.g., U.S. v. Cooperative Theaters of Ohio, Inc.
 
 (6th Cir. 1988), 845 F.2d 1367 (an agreement between two movie booking agents whereby both promised not to solicit each other’s clients was held to violate the Sherman Anti-Trust Act);
 
 [3]
 

 In the Matter of Massachusetts Brd. of Registration on Optometry
 
 (1988), 110 F.T.C. 549 (Board’s regulation of optometrists’ advertising were unenforceable restraints of trade. “Restraints on truthful advertising for professional services are
 
 inherently likely
 
 to produce anti-competitive effects.”
 
 Id.
 
 at 605 (emphasis added));
 
 State Wide Aluminum, Inc. v. Postle Distributors, Inc.
 
 (1993), Ind.App., 626 N.E.2d 511, 516,
 
 reh. denied
 
 (an agreement to allocate customers between competitors violates the Sherman Anti-Trust Act).
 

 Despite the rule’s wording in terms of the lawyer’s right to practice, it is generally acknowledged that Prof.Cond.R. 5.6 “is designed to serve the public interest in maximum access to lawyers and to preclude commercial arrangements that interfere with that goal.”
 
 Jacob v. Norris, McLaughlin & Marcus
 
 (1992), 128 N.J. 10, 607 A.2d 142, 146. Its purpose is to protect future clients from having only a restricted pool of attorneys from which to choose, and from anti-competitive practices that will drive up the price of legal services. Geoffrey C. Hazard, Jr. & W. William Hodes,
 
 The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct
 
 823-24 (Supp.1992).
 

 The goal of protecting potential clients from a diminution of their access to competent counsel was recognized in the landmark decision of
 
 Bates v. State Bar of Arizona
 
 (1977), 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810. In
 
 Bates,
 
 the United States Supreme Court held that regulations restraining the right of attorneys to advertise violated the First Amendment. The Court’s decision was based in part on the notion that advertising makes legal services more available to the community. As noted by the Supreme Court in
 
 Bates,
 
 “[s]tudies reveal that many persons do not obtain counsel even when they perceive a need because of the feared price of services or
 
 because of an inability to locate a competent attorney.”
 
 Id. at 370, 97 S.Ct. at 2702 (emphasis added).
 

 Because of the objective of Prof.Cond.R. 5.6 of protecting counsel accessibility, most courts have refused to enforce clauses in agreements which indirectly restrict the practice of law with financial disincentive provisions.
 
 See e.g., Jacob, supra
 
 (provision in termination agreement barring compensation to departing members of firm if they rendered services to clients of firm within one year. of their termination date violated public policy);
 
 Spiegel v. Thomas, Mann & Smith, P.C.
 
 (1991), Tenn., 811 S.W.2d 528 (provision in agreement conditioning the payment of deferred compensation on sharehold
 
 *1340
 
 er’s discontinuation of the practice of law is void);
 
 Anderson v. Aspelmeier Fisch, Power, Warner & Engberg
 
 (1990), Iowa, 461 N.W.2d 598 (clause in agreement allowing firm to withhold payout to withdrawing lawyer whose conduct was detrimental to the firm was not enforceable where the only conduct detrimental to the firm was the fact that a large number of clients elected to transfer their business to him);
 
 Cohen v. Lord, Day & Lord
 
 (1989), 551 N.Y.S.2d 157, 550 N.E.2d 410, 75 N.Y.2d 95 (agreement restricting the practice of law as a condition to receipt of already earned benefits was unenforceable);
 
 Hagen v. O’Connell, Goyak & Ball, P.C.
 
 (1984), 68 Or.App. 700, 683 P.2d 563 (clause which provided for a 40% penalty in value of stock if terminating attorney did not enter a noncompetition agreement was not enforceable).
 
 [4]
 

 Contra Howard v. Babcock
 
 (1993), 6 Cal.4th 409, 25 Cal.Rptr.2d 80, 863 P.2d 150,
 
 reh. denied
 
 (an agreement that assesses a reasonable cost against a partner who chooses to compete with his or her former partners does not restrict the practice of law).
 

 In refusing to enforce the financial disincentive provision in the termination agreement before it, the New Jersey Supreme Court wrote:
 

 We believe that indirect restrictions on the practice of law, such as the financial disincentives at issue in this case, likewise violate both the language and the spirit of RPC 5.6....
 

 Because the client’s freedom of choice is the paramount interest to be served by the RPC, a disincentive provision is as detrimental to the public interest as an outright prohibition. Moreover, if we were to prohibit direct restraints on practice but permit indirect restraints, law firms would quickly move to undermine RPC 5.6 through indirect means.
 

 Jacob, supra,
 
 607 A.2d at 148 — 49.
 

 We believe the provision at issue here poses a similar risk of abuse. A nonadvertisement agreement indirectly, but effectively, limits the pool of attorneys from which potential clients may choose. The risk that, if given the opportunity, law firms would utilize this method to undermine Prof. Cond.R. 5.6 is illustrated by the following testimony from Sweeney:
 

 Q: Now, in Exhibit F where both sides have restricted the other side’s right to advertise, was it your objective to — by having that restriction — to lessen the competition for business in South Bend?
 

 A: It was to — really trade markets, so to speak, with Blackburn and Green.
 

 * * * * * H*
 

 Q: But in doing that, don’t you eliminate a competitor for business in ... the communities that are listed in Exhibit “B” to this agreement, Exhibit F?
 

 A: Not necessarily. As a practical matter, until now it has been that way....
 

 Record, p. 1784.
 

 As the excerpt above demonstrates, the main goal of a covenant not to advertise is to allocate markets and consequently, decrease competition. Inasmuch as this is the result sought to be averted by Prof.Cond.R. 5.6, we conclude that paragraph 7 of the parties’ Agreement is unenforceable. Consequently, we must determine whether the remainder of the Agreement has been rendered unenforceable.
 

 If a contract contains an unenforceable provision which cannot be eliminated without destroying the symmetry and primary purpose of the contract, we may not sever the provision and enforce the rest of the contract; rather, we must deem the entire contract unenforceable.
 
 See Brokaw v. Brokaw
 
 (1980), Ind.App., 398 N.E.2d 1385, 1388;
 
 Seach v. Richards, Dieterle & Co.
 
 (1982), Ind.App., 439 N.E.2d 208, 215. Here, paragraphs 7, 8 and 19 make it clear that the covenant not to advertise was central to the entire agreement. Because the covenant not to advertise was the primary purpose of this Agreement, and because the terms therein were specifically tied to other terms in the
 
 *1341
 
 Agreement, we conclude that paragraph 7 may not be severed from the remainder. The Agreement as a whole is unenforceable.
 

 Reversed and remanded with instructions to enter summary judgment in favor of Blackburn and Green.
 

 GARRARD and MILLER, JJ., concur.
 

 [1]
 

 . Exhibit A included a list of the following counties: Adams, Allen, Huntington, Jay, Kosciusko, LaGrange, Miami, Noble, Steuben, Wabash, Wells, Whitley, Grant, Benton, Boone, Carrol, Cass, Clinton, Fountain, Howard, Miami, Montgomery, Tippecanoe, Warren, and White. Exhibit A also provided the following exception: that "Sweeney and Pfeifer may place yellow page advertising in LaGrange and Miami counties and in the city of Ligonier in Noble County." Record, p. 497.
 

 [2]
 

 . Exhibit B listed the following counties: St. Joseph, Elkhart, Marshall, LaPorte, Fulton, Starke, and Porter. Record, p. 498.
 

 [3]
 

 . 15 u.s.c. § l.
 

 [4]
 

 .
 
 See also
 
 Judge Sullivan's concurring opinion in
 
 Gomez v. Chua Medical Corp.
 
 (1987), Ind.App., 510 N.E.2d 191, 197,
 
 reh. denied,
 
 in which he postulates that our supreme court would hold that a noncompete agreement between attorneys, even though restricted as to area and duration, would violate Prof.Cond.R. 5.6.