## OHIO VALLEY COMMUNICATIONS, INC., Appellant (Plaintiff Below),

v.

## Pamela J. GREENWELL, Appellee (Defendant Below).

### No. 82A04–8905–CV–199.

Court of Appeals of Indiana,
Fourth District.

June 21, 1990.

James D. Johnson, Ross E. Rudolph, Mattingly, Rudolph, Fine & Porter, Evansville, for appellant.

Jeffrey A. Wilhite, Kahn, Dees, Donovan & Kahn, Evansville, for appellee.

CHEZEM, Presiding Judge.

### Case Summary

Plaintiff/Appellant, Ohio Valley Communications, Inc., appeals from the trial court's denial of its petition for permanent injunction against Defendant/Appellee, Penny J. Greenwell. We affirm.

### Issues

Ohio Valley Communications, Inc., raises five (5) issues; however, because we affirm on different grounds, we address only one, as follows:

---

Whether the trial court erred when it found the Covenant was an integral part of the compensation agreement, and the agreement was repudiated by Ohio Valley Communications, Inc.

### Facts

Ohio Valley Communications, Inc. (Ohio Valley) is involved in the design, installation, sale and service of various communication systems ranging from business telephone systems to commercial fire alarms, closed-circuit television, professional sound, and nurse call systems. Ohio Valley conducts business in a tri-state area which includes southwestern Indiana, southeastern Illinois, and western Kentucky. It is the sole distributor for Nipon Electric Company (NEC) systems and a local distributor for Telephone Interconnect Equipment (TIE).

Penny J. Greenwell (Greenwell) was employed by Ohio Valley on October 2, 1985; she worked part-time as a customer service representative. On October 2, 1985, Greenwell became a full-time customer service representative. On December 16, 1986, Greenwell was promoted to the position of commissioned salesperson where she sold business telephone systems and telephone accessories. As part of the promotion and in consideration for her continued employment, Greenwell was required to execute a Covenant Not to Compete and a Sales Compensation Plan, which read as follows:

### COVENANT NOT TO COMPETE

THIS AGREEMENT for a covenant not to compete is entered into by and between **OHIO VALLEY COMMUNICATIONS, INC.**, an Indiana corporation having its principal place of business in Evansville, Vanderburgh County, Indiana, hereinafter referred to as "Employer", Penny Greenwell, of Evansville, IN, Vanderburgh County, Indiana, hereinafter referred to as "Employee".

WHEREAS, the Employer desires to employ the Employee for the purposes of selling, servicing, installing and engineering communication and commercial sound and television business products and systems; and

WHEREAS, Employee desires to be employed for such purposes; and

WHEREAS, Employer is engaged in such business within a fifty (50) mile radius of Vanderburgh County, Indiana, and Jefferson County, Illinois; and

WHEREAS, Employee will become privy to customer lists, business data and sales information of the Employer; and

WHEREAS, it is the desire of the parties hereto that such information be protected and confidential information of the Employer.

NOW, THEREFORE, IN CONSIDERATION of the employment obtained by Employee with Employer, Employee covenants and agrees as follows:

1. In the event of Employee's termination as an employee of Employer, Employee shall not, for a period of three (3) years from the date of such termination, engage in the business of sales, service, installation or engineering of the following products: nurses call; fire alarms; telephone, school or large room sound systems; closed circuit television surveillance; or other products generally associated with the commercial, sound and television business; except therefrom the sales, service, installation or engineering of residential hi-fi or stereo products or residential television or associated appliances. Employee agrees that it will not engage in the business of sales, service, installation or engineering of the aforesaid products, directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, or employee, or in any other relation or capacity whatsoever within said three (3) year period and within (50) mile radius of Vanderburgh County, Indiana, and Jefferson County, Illinois.

2. During such employment and for a period of three (3) years thereafter, Employee shall not at any time, directly or indirectly, use or disclose to any persons, except Employer and its duly authorized officers or employees entitled thereto, Employee's customer lists, credit classifications, records, or other information acquired by Employee in the course of his

employment in any capacity whatsoever, nor in any manner directly or indirectly aid or be a party to any acts, the effect of which would tend to divert, diminish, or prejudice the goodwill or business of Employer.

3. In the event Employee should breach any of the foregoing promises made herein by him to Employer and Employer must employ the services of an attorney for the enforcement of any of the covenants, agreements and promises contained herein, then Employer shall be entitled, in addition to all other remedies which Employer may have against Employee herein, to recover from Employee. (sic) Employer's reasonable attorneys' fees in the enforcement of this agreement.

4. Employee warrants and represents that he has thoroughly read the terms of this agreement and understands the contents herein and that the length of time for which this agreement shall be in force and the geographical area to which this agreement extends is necessary and reasonable.

IN WITNESS WHEREOF, the parties hereto have executed this agreement this 16th day of December, 1986.

The pertinent portion of the Sales Compensation Plan is as follows:

MEMO: Sales Representative

SUBJECT: Sales Compensation Plan

Ohio Valley Communications, Inc. shall use the following compensation plan for calculating commissions and payment of same to Penny Greenwell effective immediately, and shall be automatically renewed each year except as noted below. This compensation program shall be in effect as long as the above named Sales Rep. devotes full time to selling systems or products offered by Ohio Valley Communications. Deviations from the normal mark-ups, as outlined below must be approved by the Manager of Ohio Valley Communications prior to offering such a proposal or acceptance of the order. The Sales Rep. must furnish Accounting a list of bona fide new orders and add-ons, indicating mark-up, each month. The Sales Rep. shall furnish to the Manager of Ohio Valley Communications a list of outstanding proposals or quotes and monthly update the report with new proposals, orders placed and proposals lost. A copy detailing cost, profit, labor, warranty, and freight shall be furnished with each order entered.

All insurance programs offered to sales personnel shall be included as part of the compensation plan.

Ohio Valley Communications shall participate in the expenses of Seminars and Sales/Technical Seminars as approved by Management. A percentage of participation shall be determined prior to commitment of Sales Rep. to attend. Maximum participation of expenses of Ohio Valley Communications will be 50%.

The Sales Representative shall receive biweekly a draw against commissions at an annual amount of $9,000.00. Commission shall be paid the second pay period following the month the system or equipment is paid for by the customer.

Commission rates shall be based on the following mark-up of material and equipment sales per calendar year covering jobs and "over the counter" sales.

*An executed covenant not to compete is required to execute this contract.* The above rates are in effect as long as the employee furnishes their own transportation.

Before final commission is paid the job shall be costed and excess labor expended shall be charged to the project and mark-up adjusted; conversely, surplus labor not expended on job shall be credited to gross profit and mark-up adjusted accordingly.

A sales commission shall be paid on consulting work done by the Sales Rep. where no materials or installation labor is required. The commission shall be 30% of the consulting fee charged. Minimum consulting fee shall be $50 per hour, plus expenses.

No commission shall be paid on sub-contract work or any other cost that is

passed through at no mark-up to Ohio Valley Communications.

Annually, Management and the Sales Representative will review sales performance based on profit structure on sales and deliveries to date to determine if adjustment to the above compensation policy is warranted.

Should the Sales Rep. leave the employment of Ohio Valley Communications voluntarily, sales commissions shall be relinquished upon date of resignation. In the event that the Sales Representative is terminated for just cause, sales commission will be paid to the date of termination. In either event, if the Sales Rep. leaves the employment of Ohio Valley Communications all outstanding proposals, leads, files and all properties furnished by the company shall be turned over to the General Manager. (Emphasis supplied).

While a commissioned salesperson, Greenwell was privy to ten percent (10%) of Ohio Valley's business telephone customers and customer credit classifications. She further had knowledge of Ohio Valley's business data, labor rates, profit margins, and cost analysis for the sale of the telephone systems. She primarily sold NEC systems; however, she also sold some smaller TIE systems.

It is undisputed that in the spring of 1988, she was changed from a commissioned sales position to a salaried sales position without her consent following a large commissioned sale. She also testified that several customers preferred working with male sales representatives and that the president, David M. Hammer, had made sexist statements to Greenwell, including "a big boy, a man, needed to sell [the PBX] systems."

Greenwell terminated her employment with Ohio Valley on June 24, 1988, and joined Midwest Telecom Communications the first or second week of July, 1988, as a sales representative. There she is responsible for selling TIE systems. On August 26, 1988, Ohio Valley filed a motion for preliminary injunction and sought to enforce Greenwell's Covenant Not to Compete.

On October 24, 1988, the trial court denied Ohio Valley's motion for preliminary injunction and adopted Greenwell's proposed findings of fact and conclusions of law. On January 17, 1989, a hearing was held on Ohio Valley's petition for permanent injunction; the trial court denied this petition and again adopted Greenwell's proposed findings of fact and conclusions of law on February 2, 1989. Other facts will be added as necessary.

Discussion and Decision

I

Ohio Valley must prove that the evidence was without conflict and subject to only one conclusion, one opposite to the conclusion of the trial court. *Pepinsky v. Monroe County Council* (1984), Ind., 461 N.E.2d 128. A party appeals from a negative judgment when he had the burden of proof at trial and the trial court entered a judgment against him. *Leckrone v. Lawler* (1954), 125 Ind.App. 35, 118 N.E.2d 381; *Litzelswope v. Mitchell* (1983), Ind.App., 451 N.E.2d 366.

"Because a covenant not to compete affects a person's ability to work, courts have historically viewed such covenants as impinging on public policy as well as affecting rights and duties between two parties." *Field v. Alexander & Alexander of Ind., Inc.* (1987), Ind.App., 503 N.E.2d 627, 631 (citing *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235). The covenant will be enforced if it is reasonable, is ancillary to the main purpose of a lawful contract, and is necessary to protect the covenantee in the enjoyment of the legitimate benefits of the contract or to protect the covenantee from the dangers of unjust use of those benefits by the covenantor. *Id.* (citing *Milgram v. Milgram* (1938), 105 Ind.App. 57, 12 N.E.2d 394 which held the contract must be one in which there is a main purpose, to which the covenant in restraint of trade is merely ancillary); *See also, Woodward Ins., Inc. v. White* (1981), Ind., 437 N.E.2d 59 (the covenant is valid when the covenant and contract have a significant nexus to the em-

ployment situation so as to render the covenant ancillary to the employment situation and necessary to protect legitimate rights of the employer although these rights do not arise from the contract to which the covenant is attached).

■ Greenwell was an at-will employee, and while she had no employment agreement, Ohio Valley testified, "[t]he covenant was given to her to sign in conjunction with the sales contract as part of the agreement." The agreements were executed contemporaneously, and the compensation agreement expressly stated "[a]n executed covenant not to compete is required to execute this contract." The trial court's findings stated, "[o]n or about December 16, 1988, plaintiff and defendant entered into a compensation agreement[; t]hat agreement included a Covenant Not to Compete." We note the court did not find that the covenant was ancillary to the compensation agreement.

Ohio Valley contends that the trial court erred when it found the Covenant was an integral part of the compensation agreement, and Ohio Valley repudiated the agreement. Ohio Valley specifically contends that the compensation plan was merely a separate agreement executed contemporaneously with the covenant[1] whose purpose "was to protect Ohio's interests should the employment relationship terminate" ... and "hence ... was ancillary ... to the parties [sic] employment relationship." Ohio Valley cites *Field* and *Woodward*, supra, in support of its argument.

In *Field*, the appellant's company offered appellant participation in a Long Term Capital Accumulation Program which provided incentives for employees to produce greater premium revenue and to encourage continued employment; the Program required appellant to refrain from competing with the company's customers. The Program "was restricted to employees [the compa-

ny] felt could have the greatest impact on premium revenue." *Id.* 503 N.E.2d at 629. In affirming the trial court, this Court held the covenant not to compete was ancillary to the main purpose of the Program because the Program included "key employees in an incentive program in order to influence their future performance by giving them an interest in the profits of the company." *Id.* at 632.

*Field* is not applicable here. Ohio Valley offered the compensation agreement to all sales representatives, and Greenwell was required to sign the Covenant as a condition to Ohio Valley's acceptance of her as a sales representative. Unlike the Program, signing the Covenant was not optional.

In *Woodward*, the appellee was an insurance agent who executed an offer to purchase stock and an agreement not to compete. After the appellee resigned from Woodward insurance company and became employed at another, Woodward brought suit to enforce the agreement not to compete. In overruling the trial court's grant of summary judgment for appellee, our Indiana Supreme Court stated:

> It certainly appears that there are facts in conflict which need to be heard by the trier of fact to determine the entire circumstances of [appellee's] employment situation, his acquisition of the stocks and their relationship to his employment, and the significance of the contract with relation to his employment so that a determination can be made whether or not the covenant not to compete is ancillary to the main thrust of the contract.

> .    .    .    .    .

> If, after hearing all of the facts, the trial court decided that those facts showed no more than that this was a contract for the purchase of stocks, then of course, the covenant would not be enforceable anyway because it would not be ancillary

---

1. Ohio Valley argues "[t]he trial court, by implication, further found the Covenant was not an integral part of the Agreement when it overruled Greenwell's objection to the introduction into evidence of the Covenant without the Agreement." In essence, Ohio Valley argues that because the trial court overruled Green-

well's objection the trial court is somehow estopped from deciding that the covenant is part of the agreement. We agree with Greenwell that "evidentiary rulings only determine whether evidence will be admitted or rejected ...[; t]hey are not a finding or judgment on the issues raised by the pleadings."

to an employment situation. However, if those facts reveal to the satisfaction of the court that there was consideration and that the covenant provision was ancillary to the [appellee's] employment situation, then it would not necessarily follow that the covenant provision would expire upon White's selling his stock back to the corporation. This again would depend on a determination of the facts by the court and should not be a subject of summary judgment. 437 N.E.2d at 66.

It cannot be said, as Ohio Valley contends, that the Court in *Woodward* determined that the covenant was ancillary to the stock purchase offer containing it.

The covenant was not ancillary to the main purpose of the compensation agreement and is therefore void. *See Milgram,* supra.

Upon different grounds, we affirm the trial court's denial of Ohio Valley's petition for permanent injunction.

MILLER, J., concurring.

HOFFMAN, P.J., concurring in result with separate opinion.

HOFFMAN, Presiding Judge, concurring in result.

I concur in result. My concurrence is based upon the findings of the trial court. The evidence supports the findings and we are not at liberty to reweigh the evidence. The findings support the judgment.