In re STATEWIDE OILFIELD CONSTRUCTION, INC., d/b/a Golden State School, Debtor.

STATEWIDE OILFIELD CONSTRUCTION, INC., Plaintiff,

v.

CAREER COLLEGE ASSOCIATION, formerly the National Association of Trade and Technical Schools, Defendant.

Bankruptcy No. 188–03088–A–11.
Adv. No. 188–0335.

United States Bankruptcy Court, E.D. California.

Oct. 9, 1991.

John P. Eleazarian, Kimble, MacMichael & Upton, Fresno, Cal., for plaintiff.

Michael L. Wilhelm, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, Cal., and Mark L. Pelesh, Lauren M. Bloom, Cohn and Marks, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF COURT'S DECISION TO DENY PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION

RICHARD T. FORD, Bankruptcy Judge.

The Career College Association, formerly the National Association of Trade and Technical Schools ("NATTS"), by its counsel, hereby submits proposed Findings of Fact and Conclusions of Law in support of the Court's decision to deny the motion of Plaintiff Statewide Oilfield Construction Inc., d/b/a Golden State Schools ("Golden State"), for a permanent injunction restoring the accreditation of Golden State's schools.[1]

### STATEMENT OF THE CASE

A. *The Accreditation Proceeding*

Golden State was a technical school with five separate campuses in California. Its facilities in Bakersfield and San Bernardino were free-standing "main schools."[2] Its facilities in Anaheim, Santa Maria and Fresno were "branches" of the San Bernardino main school.

The Fresno branch was first accredited by NATTS in 1986. NATTS learned that the school had failed to refund tuition in a timely manner to students who elected to leave school before completing their training. NATTS's accrediting standards prescribe deadlines by which tuition must be refunded. In July of 1988, the Accrediting Commission directed Golden State to show cause why its accreditation should not be withdrawn.

---

**1.** The Court denied Golden State's motion for a permanent injunction at the conclusion of a hearing on September 16, 1991.

**2.** The Bakersfield facility is not involved in this proceeding.

Golden State responded in August of 1988, admitting that it had been "inexcusably delinquent on a significant percentage of refunds," and that the school had been "deficient in both its management decisions and control procedures regarding the discharge of its financial obligations." Golden State further advised NATTS that it had filed for reorganization under Chapter 11 of the Bankruptcy Code shortly after the issuance of the show cause order.

In October of 1988, the NATTS Accrediting Commission withdrew Golden State's accreditation for failure to comply with accrediting standards on refunds and the exercise of control and supervision by a main school over its branches. Golden State took an appeal to the NATTS Appeals Panel, but failed to convince the Panel that the Commission's action was the result of an error of fact or misinterpretation of the Standards of Accreditation. The Appeals Panel, therefore, affirmed the Commission's decision, and Golden State was removed from the NATTS list of accredited schools in December of 1988.

### B. *The Bankruptcy Proceeding*

On December 20, 1988, Golden State filed suit against NATTS in this Court, seeking a declaration that its relationship with NATTS was an executory contract that the school, as a debtor-in-possession, could assume under Section 365 of the Bankruptcy Code. Golden State also sought a temporary restraining order, and preliminary and permanent injunctions, requiring NATTS to restore the accreditation of its schools.[3]

The Court denied Golden State's motion for a temporary restraining order, but on January 10, 1989, the Court granted Golden State's motion for a preliminary injunction. The Court held that both parties had unperformed obligations sufficient to render their relationship an "executory contract." The Court further held that Golden State was likely to succeed on the merits of its claim against NATTS because it could cure its past default and assume accreditation.

NATTS appealed that decision to the U.S. District Court for the Eastern District of California. However, the District Court affirmed this Court's finding that the accreditation relationship is an executory contract, and upheld issuance of a preliminary injunction. NATTS then appealed to the U.S. Court of Appeals for the Ninth Circuit. The Court of Appeals declined to decide the merits of NATTS's appeal, finding that it lacked jurisdiction to do so.

While NATTS's appeal to the Court of Appeals was pending, Congress amended the Bankruptcy Code to state that the automatic stay of Section 362 does not apply to "any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution," and that property of the estate in bankruptcy does not include "any accreditation status or state licensure of the debtor as an educational institution." *See* P.L. 101–508, §§ 3007(a)(1)(C) and (a)(2)(C). In its Order, the Court of Appeals noted these amendments and directed that, "[u]pon resumption of jurisdiction, the bankruptcy court shall consider the applicability of this law to the facts and circumstances of this case." This Court entertained argument from NATTS and Golden State regarding the applicability of the amendments to this case and, for the reasons stated below, found in favor of NATTS.

### DISCUSSION

This Court's issuance of a preliminary injunction to restore the accreditation of Golden State's schools was predicated upon its finding that Golden State's suit against NATTS was a proceeding to assume an executory contract. The Court found that both Golden State and NATTS, at the time of Golden State's filing in bankruptcy, had sufficient unperformed obligations to render the contractual relationship between them "executory," and thus, subject to assumption under Section 365 of the Bankruptcy Code.

However, in the Omnibus Budget Reconciliation Act of 1990, Congress amended

---

**3.** Golden State also sought comparable relief against the U.S. Department of Education ("DOE"); its claim against DOE was subsequently dismissed by stipulation of the parties.

**402**

the Bankruptcy Code to state that the automatic stay does not apply to "any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution." (*See* P.L. 101–508, § 3007(a)(1)(C)). The Act also amends the Code's definition of "property of the estate in bankruptcy" to specifically exclude "any accreditation status or state licensure of the debtor as an educational institution." (*See* P.L. 101–508, § 3007(a)(2)(C)). This latter amendment is of critical significance to this proceeding.

■■■ Executory contracts embody a potential asset for the estate in bankruptcy: the debtor's contractual right to receive the non-debtor's performance. They may also embody a claim in the distribution of the estate's assets: the non-debtor's contractual right to receive the debtor's performance. The purpose of Section 365 of the Bankruptcy Code and its statutory predecessors is to provide for the proper administration of these contractual claims in the hierarchy of claims against the estate. *See* Andrew, "Executory Contracts in Bankruptcy: Understanding 'Rejection'," 59 U.Colo.L.Rev. 845, 855 (1988). If an executory contract is assumed, it acquires the status of an asset of the estate, and the non-debtor's contractual rights become an administrative liability with priority over other claims. If the executory contract is rejected, however, the contract does not vest in the estate, and the non-debtor has only a claim, like that of any other creditor, to a distributive share of the estate's assets. *Id.* at 860–63, 881–83; *In re Lovitt*, 757 F.2d 1035, 1040–41 (9th Cir.), *cert. denied sub nom. Cheadle v. Appleatchee Riders Association*, 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985).

■■■ The courts of this Circuit have repeatedly recognized that, when assumed by the trustee or debtor-in-possession in bankruptcy, an executory contract becomes an asset of the bankruptcy estate. *See Lovitt, supra,* 757 F.2d at 1041; *accord, In*

*re Tleel*, 876 F.2d 769, 770 (9th Cir.1989); *In re Moreggia & Sons, Inc.,* 852 F.2d 1179, 1185 (9th Cir.1988). Congress has made clear, however, that accreditation may never be an estate asset. *See* P.L. 101–508, § 3007(a)(2)(C). The accreditation relationship, therefore, cannot be deemed an "executory contract," because accreditation cannot fulfill one of the primary functions of an "executory contract": to become an asset of the estate when affirmatively assumed by the trustee or debtor-in-possession. Since Congress has eliminated any basis to characterize the relationship between Golden State and NATTS as an "executory contract," the Court concludes that no basis exists for the Court to issue a permanent injunction requiring NATTS to restore the accreditation of Golden State's schools, and that the preliminary injunction previously issued should be dissolved.[4]

### CONCLUSION

In light of the foregoing, the preliminary injunction entered against NATTS in this proceeding is dissolved, and Golden State's request for a permanent injunction is denied.

---

4. The Court was not persuaded by Golden State's argument that the Omnibus Budget Reconciliation Act is inapplicable here because Section 365 of the Bankruptcy Code was not specifically amended to state that accreditation is not an executory contract. Executory contracts, when assumed, are one class of estate assets. By excluding accreditation from the statutory definition of "property of the estate," Congress excluded it from all classes of estate assets, including executory contracts.