### In the Matter of Barry Stuart UDELL, Debtor.

**Bankruptcy No. 92–11325.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Sept. 17, 1992.

Mark Warsco, Fort Wayne, IN, for debtor.

Douglas Adelsperger and Robert Nicholson, Fort Wayne, IN, for creditor.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on a motion for relief from stay, filed on behalf of Carpetland, USA. Carpetland argues that "cause" exists to terminate the automatic stay, pursuant to § 362(d)(1), to allow it to enforce a preliminary injunction entered by the Allen Superior Court against the debtor.

■ The burden of proof on a motion for relief from stay is a shifting one. The moving creditor must initially make a prima facie case that cause exists to lift or modify the stay. Having successfully done so, the burden then shifts to the debtor to show that cause does not exist. *In re Kerns,* 111 B.R. 777, 786 (D.S.D.Ind.1990); *In re Sauk Steel Co.,* 133 B.R. 431, 436 (Bankr.N.D.Ill.1991).

Prior to filing his bankruptcy petition, the debtor worked for Carpetland for a number of years, moving from sales to the position of Vice President/General Manager. On August 21, 1989, the debtor signed an employment contract with Carpetland which contained a covenant not to compete. Debtor agreed not to participate in any business similar to Carpetland's for three years within a radius of fifty miles if, for any reason, the agreement was terminated.

Debtor terminated the agreement by submitting a letter of resignation to the owner of Carpetland on April 27, 1992. Shortly thereafter debtor purchased a small carpet store in the Fort Wayne area. He then filed a state court action against Carpetland and its owners for breach of the employment contract. The defendants counter-claimed and sought a preliminary injunction based upon the covenant not to compete. The Allen Superior Court granted the preliminary injunction on June 9, 1992, after a hearing and the submission by both sides of proposed findings of fact and conclusions of law. This injunction

> restrained and enjoined [him] from directly or indirectly, owning, managing, operating, controlling, or being controlled by, participating in, or connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by Carpetland within a fifty mile radius of the corporate limits of Allen County, Indiana. *Udell v. Standard Carpetland, U.S.A.,* No. 02D01–9205–CP–907 (Allen County Superior Ct. June 9, 1992) (order granting preliminary injunction).

The preliminary injunction became effective on June 12, 1992, after Carpetland posted the required bond. *See* Ind. T.R. 65(C).

■ On June 15, 1992, the debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. Despite the state court's order, the debtor continues to engage in the same conduct which caused the injunction to issue. Nonetheless, because of the automatic stay, Carpetland cannot seek to enforce the preliminary injunction. *See* 11 U.S.C. § 362(a). Therefore, it asks this court to lift the stay in order to allow the state court proceedings to continue so that it may, *inter alia,* enforce the injunction.

Debtor opposes the motion arguing that it has sought to reject the executory contract between it and Carpetland, pursuant to § 365 of the Bankruptcy Code. It contends that a successful rejection will relieve it of the burden of the covenant not to compete and, thus, Carpetland's right to an injunction. Carpetland disagrees. It challenges both debtor's ability to reject the contract and the debtor's interpretation of the effect of rejection.

Carpetland first argues that the employment agreement between it and the debtor, which contains the covenant not to compete, is no longer "executory" and, therefore, cannot be rejected. Debtor argues that the agreement is still "executory" and all the obligations included within it are avoided upon rejection.

■ Recently, persuasive scholarly analysis of executory contracts and bankruptcy has argued that the search for "executoriness" as a precondition to rejection is misplaced. *See* Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook,* 62 U.Colo.L.Rev. 1 (1991); Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts,* 74 Minn. L.Rev. 227 (1989); Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection",* 59 U.Colo.L.Rev. 845 (1988). Professors Andrew and Westbrook both emphasize that rejection should be conceived as nothing more than the estate's business decision not to perform an obligation of the debtor, in the same fashion that a party to any contract always has

the option either to perform or to breach an obligation and to accept the consequences of that decision. Thus, courts should not place the focus of rejecting executory contracts upon whether or not rejection is an available option but, instead, upon the consequences of rejection, as between creditor and the estate, and the effect of any discharge the debtor might ultimately obtain upon the rejected obligation.

■ Professor Andrew aptly describes the morass of cases which have dealt with the effect of rejection of an executory contract as "a hopelessly convoluted and contradictory jurisprudence" Andrew, *Reply* 62 U.Colo.L.Rev. at 2. One fundamental error identified by Professors Westbrook and Andrew is the notion that rejection in some way destroys the existence of the contract and allows the debtor to act as though it never existed. Westbrook, *Functional Analysis*, 74 Minn.L.Rev. at 239; Andrew, *Executory Contracts*, 59 U.Colo. L.Rev. at 884. They emphasize that the rejection of an executory contract is not an avoiding power and does not operate to rescind or otherwise destroy the contract and the rights and obligations it contains. Instead, rejection constitutes nothing more than a pre-petition breach of the contract. 11 U.S.C. § 365(g)(1). As Professor Andrew succinctly states:

Rejection's effect is to give rise to a remedy in the non-debtor party for breach of the rejected contract, typically a right to money damages assertable as a general unsecured claim in the bankruptcy case. Rejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated. Andrew, *Reply*, 62 U.Colo. L.Rev. at 16; *see generally In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 700–09 (Bankr.S.D.N.Y.1992).

This court, as have others before it, agrees with Westbrook and Andrew's approach to executory contracts. *See Texaco, Inc. v. Louisiana Land & Exploration Co.*, 136 B.R. 658, 667–68 (D.M.D.La.1992); *In re 6177 Realty Assoc., Inc.*, 142 B.R. 1017 (Bankr.S.D.Fla.1992); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 689 (Bankr.S.D.N.Y.1992); *In re Statewide Oilfield Constr. Inc.*, 134 B.R. 399, 402 (Bankr.E.D.Cal.1991). Accordingly, the court need not decide whether or not the contract between the debtor and Carpetland is "executory" or whether or not the debtor can reject it. Indeed, for the purposes of this decision, we assume that it is and that the debtor can do so. In either event, the resulting analysis is exactly the same. If the debtor cannot reject the contract, the issue before the court turns upon the effect of the debtor's potential Chapter 13 discharge upon the obligation represented by the covenant not to compete. In the same fashion, since rejection is not an avoiding power and does not operate to destroy, rescind, or nullify the rejected obligation, after rejection the question before the court becomes one of whether or not the debtor's potential Chapter 13 discharge will encompass the rejected restrictive covenant. As Professor Westbrook states:

The important thing [about covenants not to compete] is that the right to discharge is the correct place to tussle over this issue, rather than it being the offshoot of some special rule about bankruptcy contracts. Westbrook, *Functional Analysis*, 74 Minn.L.Rev. at 277–78. *See also* Andrew, *Executory Contracts*, 59 U.Colo.L.Rev. at 927–28 (Executory nature of contract has nothing to do with the enforceability of covenant not to compete against debtor).

■ Upon the successful completion of a confirmed Chapter 13 plan, the debtor is entitled to a discharge. 11 U.S.C. § 1328(a). This discharge applies to "all *debts* provided for by the plan ..." *Id.* At least in this respect—in the sense that the discharge applies only to debts—the Chapter 13 discharge operates in the same way as a discharge under any other Chapter of the Bankruptcy Code. See 11 U.S.C. § 524(a). It is only "debts" which can be discharged, *Johnson v. Home State Bank*, — U.S. —, —, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991), and this is something less than all obligations of the debtor. If an obligation is not a debt it is not encompassed by the discharge. Thus, the

ultimate question before the court is whether the debtor's covenant not to compete with Carpetland, rejected or not, is a debt.

■ The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). The term "claim" means:

(A) *right to payment,* whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment,* whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(5) (emphasis added).

Although the definitions of debt and claim are very broad indeed, *Johnson,* —— U.S. at ——, 111 S.Ct. at 2154; *Matter of Rosteck,* 899 F.2d 694, 696 (7th Cir.1990); *In re Energy Co-Op, Inc.,* 832 F.2d 997, 1001 (7th Cir.1987), they are not broad enough to encompass all possible obligations of a debtor. Their "key concept ... involves 'a right to payment.'" *In re Wells Properties, Inc.,* 102 B.R. 685, 693 (Bankr.N.D.Ill. 1989). The plain meaning of this right is nothing more nor less than an enforceable obligation to pay money, regardless of the objective the obligation seeks to serve or the manner by which it is enforced. *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990). Thus, given the statutory definition, to be capable of being discharged an obligation must be able to be reduced to or transformed into a "right to payment". If it cannot be so reduced or so transformed, the obligation is not a debt and, therefore, cannot be discharged.

Little direct guidance exists in either the Bankruptcy Code or the legislative history of the statute concerning whether state law or federal bankruptcy law determines if the right to an equitable remedy for a breach of performance gives rise to a "right to payment." Professor Westbrook advocates using a federal standard which would allow most equitable remedies to be reduced to a "right to payment" in bankruptcy. Westbrook, *Functional Analysis,* 74 Minn.L.Rev. at 277–78 n. 215. He bases his advocacy for a federal standard on the broad language of § 101(5) and the extensive power of the bankruptcy court to estimate claims pursuant to § 502(c). *Id.* Under this analysis, the breach of a covenant not to compete would become compensable in bankruptcy by money damages even though it might not be under state law. Therefore, it would represent a claim which could be discharged.

■ This court disagrees with Professor Westbrook's proposal for a federal standard. The court's power under § 502(c)(2) to estimate claims is specifically limited to

(2) any right to payment arising from a right to an equitable remedy for breach of performance. 11 U.S.C. § 502(c)(2).

By this language, Congress is indicating that only when the equitable remedy gives rise to a "right to payment" will it become a claim which the bankruptcy court can estimate and discharge. It is circular to argue that the power to estimate the right to payment arising from the right to an equitable remedy for a breach leads to the conclusion that the equitable remedy for a breach gives rise to a "right to payment." If this is the result that Congress intended, it would have been much simpler and more direct to define debts and claims as all obligations of the debtor.

■ It is more appropriate to look to state law to determine if an equitable remedy can give rise to a "right to payment." State law is, after all, the starting point for any analysis of the competing rights of debtors and creditors. *See Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (absent an overriding federal interest, state law should be looked to in determining an interest in property). Bankruptcy *begins* with these entitlements and then adjusts them in order to equitably distribute the assets of the estate and provide relief to the debtor. Just as issues concerning the validity and the nature of

"claims" are determined according to state law, *Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991), so too should the issue of whether an equitable remedy gives rise to a "right to payment."

While not dealing with equitable relief, the Third Circuit's decision, *Matter of M. Frenville Co., Inc.*, 744 F.2d 332 (3rd Cir. 1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), supports reliance on state law in determining the existence of a right to payment. In *Frenville* the debtor's accounting firm wanted to add the debtor as a third-party defendant in a state suit. The court reasoned that whether it could do so depended on when the firm's "right to payment" arose. The court concluded that

> while federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, is to be determined by reference to state law. *Frenville*, 744 F.2d at 337 (internal quotation marks omitted).

This principle accords with bankruptcy's general reliance on state law to determine a creditor's rights. *See Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 791 F.2d 524, 532 (7th Cir.1986) ("Bankruptcy law provides a federal machinery for enforcing creditors' rights but the rights themselves are created by state law.").

Reliance upon state law is also consistent with the legislative history behind the final version of what is now § 101(5). The statutory definition is essentially a compromise between the House version, which would have included all equitable remedies as claims, and the Senate version, which would not have included any equitable remedies as claims. Congress recognized that state law would determine when a right to payment existed as an alternative to equitable relief.

> Section [101(5)(B)] represents a modification of the House-passed bill to include [in] the definition of "claim" a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. This is intended to cause the liquidation or estimation of contingent rights of payment for which there may be *an alternative* equitable *remedy* with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, *in some states*, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused; in that event, the creditor entitled to specific performance would have a "claim" for purposes of a proceeding under [the Bankruptcy Code].
>
> On the other hand, rights to an equitable remedy for a breach of performance with respect to which such breach does not give rise to a right to payments are not "claims" and would therefore not be susceptible to discharge in bankruptcy. 124 *Cong. Rec.*, H11,090; 124 *Cong. Rec.*, S17,406 (1978) (remarks of Rep. Edwards and Senator Deconcini) (emphasis added).

In confronting the issue of whether or not the debtor could reject an executory contract that contained a covenant not to compete, the bankruptcy court in *In re Audra–John Corp.*, 140 B.R. 752 (Bankr. D.Minn.1992) directly addressed the issue of whether state or federal law determined the consequences of the deemed breach that would result from a successful rejection. It concluded:

> State law—not federal bankruptcy law— identifies the remedies which the nonrejecting party has upon the deemed breach, and dictates the relief that the Bankruptcy Court must accord to the non-rejecting party. *Audra–John*, 140 B.R. at 757.

*See also In re Hohol*, 141 B.R. 293, 298 (D.M.D.Pa.1992); *In re May* 141 B.R. 940, 944 (Bankr.S.D.Ohio 1992); *In re Oseen*, 133 B.R. 527, 530–31 (Bankr.D.Idaho 1991); *In re Thomas*, 133 B.R. 92, 95 (Bankr. N.D.Ohio 1991); *In re Don & Lin Trucking Co.*, 110 B.R. 562, 568 (Bankr.N.D.Ala. 1990); *In re Hawes*, 73 B.R. 584, 586 (Bankr.E.D.Wis.1987). No reason exists that the bankruptcy court's traditional reliance on state law, to determine a creditor's rights, should turn upon whether those

rights arise out of the breach of contract that is deemed to occur as the result of rejection under § 365 or from an actual breach which occurred prior to the petition. The result to the creditor—a debtor's promise unfulfilled—is the same and the timing of that result is purely a function of the happenstance in the timing of the bankruptcy petition.

The court, therefore, concludes that Indiana law identifies the remedies otherwise available for the breach of a covenant not to compete. Those remedies will determine whether or not such an obligation represents a "debt" which is capable of being discharged. If Indiana law provides *alternative* remedies, which would allow an equitable decree to be satisfied either through performance or by the payment of money, the obligation constitutes a debt. *In re Pribonic*, 70 B.R. 596, 601–602 (Bankr.W.D.Pa.1987). *See also Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (The obligation to pay restitution or risk revocation of probation constituted a debt.). "If [,however,] the *only* remedy allowed by law is non-monetary, the equitable remedy is not transformed into a claim and it survives...." *In re Aslan*, 65 B.R. 826, 830–831 (Bankr.C.D.Cal.1986), *rev'd in part on other grounds*, 909 F.2d 367 (9th Cir.1990) (emphasis in original). *See also Pribonic*, 70 B.R. at 602; *In re Roxse Homes, Inc.*, 74 B.R. 810, 819 (Bankr. D.Mass.1987), *aff'd sub nom. Roxse Homes, Inc. v. Roxse Homes L.P.*, 83 B.R. 185 (D.D.Mass.1988), *aff'd without opinion*, 860 F.2d 1072 (1st Cir.1988).

Covenants not to compete are not favored under Indiana law, because they are considered to be a restraint of trade. *Hahn v. Drees, Perugini & Co.*, 581 N.E.2d 457, 459 (Ind.App.1991); *Ohio Valley Communications, Inc. v. Greenwell*, 555 N.E.2d 525, 528 (Ind.App.1990). At the same time, however, the state also has a deep belief in the freedom to contract, which, if it is to be real, includes the enforcement of covenants not to compete. *Gomez v. Chua Medical Corp.*, 510 N.E.2d 191, 195 (Ind.App.1987). Consequently,

"[i]f an individual agrees to be bound by a covenant against competition ... [there is] no compelling reason to deny enforcement of his promise." *Id.* As a result of the tension between these competing ideals, covenants not to compete are enforceable if

reasonable, ... ancillary to the main purpose of a lawful contract, and ... necessary to protect the covenantee in the enjoyment of the legitimate benefits of the contract or to protect the covenantee from the dangers of unjust use of those benefits by the covenantor. *Ohio Valley*, 555 N.E.2d at 528.

The requirement that the covenant be reasonable can be broken down into three elements:

1) the restraint is reasonably necessary to protect the employer's business;

2) it is not unreasonably restrictive of the employee; and

3) the covenant is not antagonistic to the general public interest. *Slisz v. Munzenreider Corp.*, 411 N.E.2d 700, 704 (Ind.App.1980).

The restrictions on the use of an injunction to enforce a covenant not to compete are all directed toward one primary goal; to ensure that the injunction will issue only when the covenantee will be injured in such a way that it cannot be readily compensated by damages. *Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 127 N.E.2d 235 (1955). *See also Walgreen Co. v. Sara Creek Property Co.*, 966 F.2d 273 (7th Cir.1992) (injunctions are not granted as a matter of course, but only when plaintiff's damages remedy is inadequate). Indiana has, therefore, created a very specific standard for deciding if injunctive relief is appropriate. Although the parties may structure their contract in such a way that a legal remedy is available, by, for example, agreeing upon a stipulated amount of damages which may be recovered in the event of a breach, *see Martin v. Murphy*, 129 Ind. 464, 28 N.E. 1118, 1119 (1891); *Gomez v. Chua Medical Corp.*, 510 N.E.2d 191 (Ind.App.1987); *College Life Ins. Co. of America v. Austin*, 466 N.E.2d 738, 745 (Ind.App.1984) (contract authorized competition in violation of restrictive

covenant upon payment of liquidated damages); *compare McCart v. H & R Block, Inc.,* 470 N.E.2d 756, 765 n. 2 (Ind.App. 1984) (contract provided for injunctive relief in addition to monetary damages),

> [g]enerally, one who shows the violation of a valid contract between him and another, binding the other not to pursue a given occupation, and shows that by such violation of contract he is injured, is entitled to an injunction restraining the offending party. *Martin,* 129 Ind. at 465, 28 N.E. at 1118–19.

Indeed, except in those situations where the parties contract for money damages, neither the briefs of the parties nor the court's own research have discovered a single Indiana decision in which the court declined to enforce an otherwise valid covenant not to compete through an injunction, preferring, instead, to award only monetary relief.[1] Where an injunction is the proper remedy under this standard, then it does not give rise to an alternative right to payment and cannot be discharged in bankruptcy.

■■■■ In this case, it is not necessary for the court to decide if an injunction is the appropriate remedy under Indiana law. The state court has already considered the issue and has, at least preliminarily, determined that it is. If the state court ultimately issues a permanent injunction, the obligation that injunction is designed to enforce will not constitute a debt or claim and cannot be discharged in this proceeding. If, on the other hand, the state court would determine that a permanent injunction is not appropriate, the debtor will have the right to proceed against Carpetland and the bond it was required to post, in order to recover any damages he might sustain as a result of having been wrongfully enjoined. *See* Ind.T.R. 65(C).

■■■■ The court is mindful that up to this point the state court has issued only a *preliminary* injunction, rather than a permanent one. Nonetheless, the court is not persuaded that the preliminary nature of the injunctive relief Carpetland has obtained should significantly alter the court's analysis. In the first instance, the court's decision is largely dependent upon its conclusion that Carpetland's right to enforce the restrictive covenant does not constitute a debt which can be discharged. Consequently, debtor's obligation under it cannot be altered as a result of his bankruptcy or through the confirmation and performance of a proposed plan. Furthermore, a consideration of the policies and goals underlying the competing interests and hardships of both parties leads the court to the same conclusion. *See In re Cardinal Industries, Inc.,* 116 B.R. 964, 983 (Bankr.S.D. Ohio 1990).

■■■■ Three factors are traditionally considered when the court is asked to terminate the automatic stay in order to allow pending litigation to continue. (1) The degree of prejudice to either the debtor or the estate as a result of allowing the nonbankruptcy litigation to continue; (2) whether the hardship to the moving party by continuing the stay outweighs the hardship to the debtor; and (3) the creditor's probability of prevailing on the merits in the litigation. *See Matter of Fernstrom Storage and Van Co.,* 938 F.2d 731, 735 (7th Cir. 1991).

■■■■ Viewed from one perspective, the harm to both the debtor and the estate is potentially severe if Carpetland is allowed to enforce its injunctive rights. At the present time, debtor's competition with Carpetland represents his only source of income. Restraining that competition will almost certainly doom any prospect of successfully performing a Chapter 13 plan. The severity of this reality does not, however, warrant denying the motion. If the debtor is breaching his nondischargeable obligation not to compete with Carpetland, the fact that enforcement of that obligation may deprive him of his only source of in-

---

**1.** Although the contract between the debtor and Carpetland contains a provision for liquidated damages, this monetary remedy is in addition to, rather than in lieu of, its right to injunctive relief. Carpetland's Ex. A, ¶ 11. *See generally,* *Restatement (Second) of Contracts,* § 361; 5A *Corbin on Contracts* § 1213 (despite provision for liquidated damages, an injunction may be granted). *See also Duckwall v. Rees,* 119 Ind. App. 474, 478–79, 86 N.E.2d 460, 462 (1949).

come "is of no moment." *In re Hohol,* 141 B.R. 293, 299 (D.M.D.Pa.1992). Furthermore, to refuse to terminate the stay will deprive Carpetland of its rights and opportunity to enforce the restrictive covenant. The debtor's obligation not to compete with Carpetland will expire by its own terms during the life of debtor's proposed plan. An obligation capable of being enforced will no longer exist if the court requires Carpetland to wait until the debtor receives his discharge and the stay terminates as a matter of law. 11 U.S.C. § 362(c)(2)(C). Thus, Carpetland can only receive the benefit of its bargain with the debtor if the court lifts the stay now. Although the present injunction is only preliminary, the bond Carpetland was required to post in order to obtain it will serve to protect the debtor in the event the state court would determine that it should not have been issued. As a result, this court concludes that the potential harm to Carpetland by continuing the stay outweighs the potential harm to the debtor which may flow from terminating it.

Carpetland has also, in this court's opinion, made a satisfactory demonstration of its likelihood of prevailing on the merits. The state court has already made a preliminary inquiry into the enforceability of the covenant, the debtor's violation of it and the resulting consequences to the creditor in connection with issuing the preliminary injunction. To the extent that the issue before the court turns on the answer to these inquiries, the court may properly rely on the state court's decision. *See In re Oseen,* 133 B.R. 527, 531 (Bankr.D.Idaho 1991); *Hohol,* 141 B.R. at 298. To do otherwise would undermine the traditional appellate process by permitting the bankruptcy court to become a forum in which parties can relitigate matters that have previously been resolved against them. While the bankruptcy court may provide debtors with the opportunity to deal with the consequences of an adverse decision, it is not the place to reexamine the wisdom or propriety of another court's action. Unfortunately

for this debtor, since the obligation in question does not represent a debt, the Bankruptcy Code does not provide him with a mechanism to deal with the consequences of the state court's decision to enforce it.

The Second Circuit's decision in *In re Sonnax Industries, Inc.,* 907 F.2d 1280 (2nd Cir.1990) does not change the court's analysis. In that case the state court granted a preliminary injunction against the debtor's operations based upon a covenant not to compete between the movant and an employee of the debtor, who had formerly worked for the movant. The appellate court held that the bankruptcy court did not abuse its discretion when it concluded that the existence of a preliminary injunction was not "cause" to lift the stay and stop the debtor's operations. The debtor had been a going concern for years before the bankruptcy was filed and the creditor asking for the stay to be lifted was its main competitor. Unlike Udell, Sonnax had no direct contractual relationship with the movant.[2]

The Allen Superior Court has, at least preliminarily, determined that the debtor and Carpetland are parties to an otherwise enforceable covenant not to compete which the debtor is violating. Under Indiana law, the proper remedy is an injunction and there is no alternative remedy which would give rise to a right to payment. As such, the obligation represented by the covenant not to compete is not a debt and will not be discharged by the debtor's bankruptcy. Carpetland should be allowed to enforce that obligation while it still exists.

The creditor's motion to lift the stay will be granted. An order doing so will be entered.

---

**2.** The court would also note that *Sonnax* involved an appeal from the bankruptcy court's decision that "cause" did not exist to lift the

automatic stay. Unlike the bankruptcy judge in that case, it is this court's decision that "cause" does exist.